HANSMAR, INC., Plaintiff-Appellee, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellants.

Second District    No. 78-334

Opinion filed November 20, 1979.

William J. Scott, Attorney General, of Chicago (Gregory C. Lawton and Russell C. Grimes, Assistant Attorneys General, of counsel), for appellants.

Donald C. Dowling, of Dowling & Safanda, of St. Charles, and Douglas Comstock, of Geneva, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The Illinois Liquor Control Commission (ILCC) appeals from a judgment on judicial review which reversed its order suspending the license of Hansmar, Inc., for 21 days. The suspension was based on charges that Hansmar allowed minors to remain on the premises, remained open after required closing time and allowed alcoholic beverages to be consumed off the premises, all in violation of city ordinances.

Hansmar is the owner of the Tumble Inn, a tavern with restaurant facilities seating approximately 30 to 35 patrons, located in West Chicago. John Bullaro, a chief of the city's police, testified that he had received numerous complaints from citizens about the operation of the Tumble

Inn. At his direction, police officers, Jerome Dolan and Gary Dye, undertook a surveillance in the period between April 15 and April 18, 1977, from the second floor of a building across the street. The officers observed the Main Street entrance to the Inn using a light-intensifying telescope, a camera and field glasses. They observed and photographed the exterior of the tavern at that entrance. The Tumble Inn also has an entrance and exit on Galena Street which the officers were unable to observe. The officers testified that they took photographs of various people leaving and entering the Tumble Inn. The photographs were identified as depicting Pam Hessler, Sam Boddie, Debbie Kudzna and Robert Gangestad.

The city offered a computer printout obtained from the Office of the Secretary of State to prove the age of Sam Boddie, which showed his birth date as June 4, 1959, making him 17 at the time of the occurrence. The ages of Debbie Kudzna and Robert Gangestad were determined to be 17 through city of West Chicago police records. As to Kudzna and Boddie there was testimony that they were seen to enter the tavern and leave after some 15 to 20 minutes.

There was also testimony regarding a photograph taken of a man and woman identified as Kenneth Sudano and his wife taken on April 17 at about 2:15 a.m. There was testimony that Sudano and his wife were observed entering the Inn about 3 minutes to 2 a.m., which was the closing hour, and leaving at 2:15 carrying a package that appeared to be liquor; but there was also evidence that Sundao was helping the owner clean up which he had done on previous occasions. There was further testimony regarding a photograph taken of the owner of the Tumble Inn which allegedly depicted him carrying on a conversation with another person in the tavern at 2:15 a.m. This was seen through the tavern door which was then open; but there was additional testimony that the patron was intoxicated, had been ordered to leave and that the owner was in the process of flagging down a passing squad car to remove him.

Photographs were introduced with supporting testimony allegedly to show that patrons left the Tumble Inn carrying glasses or bottles which appeared to contain liquor; and of persons seen walking out of the Tumble Inn carrying beer bottles and walking up and down the street taking sips or with a glass or a can of beer in their hands.

There was testimony that the owner of Hansmar had a strict policy forbidding minors to remain in the tavern; that they were allowed to use the washroom in the restaurant or the telephone but that they were never permitted to stay. There was also testimony that customers often brought in glasses from other taverns and that there was a policy to keep patrons from removing them from the bar; also, that the streets and sidewalks

were littered with empty beer bottles and cans after closing hours, which came from various neighboring taverns.

After the hearing before the local liquor control commissioner, the charges were sustained and plaintiff's license was suspended for a period of 30 days. On appeal the ILCC modified the suspension to a total of 21 days which included a previous 13 day suspension. On plaintiff's complaint for administrative review the circuit court reversed the decision of the commission in its entirety, holding the decision to be against the manifest weight of the evidence, from which this appeal followed.

We agree with the conclusion of the trial judge that there was not adequate proof of the charges relating to alleged closing hour violations and alleged violation of the ordinance prohibiting patrons from consuming liquor on public property.

■■ ■ The closing ordinance provided that no sales were to be made between 2 a.m. and noon on Sunday and that customers were required to leave the premises not later than 10 minutes following the closing hour. While the Sudano incident allegedly occurred on Sunday, April 17, when Sudano exited the Tumble Inn 5 or 10 minutes after the grace period expired the record shows that he remained after closing to help the owner and there is no allegation that he purchased or consumed liquor after 2 a.m. although he did purchase beer prior to closing. The requirement that patrons and customers leave the premises within 10 minutes of closing was, of course, designed to enforce the restriction of the ordinance against the sale of liquor after specified hours. We conclude that the ordinance is inapplicable to persons performing services for the licensee either gratuitously or for compensation as the evidence shows was the case with Sudano. Performance of work by one party is prima facie evidence of employment and in the absence of contrary evidence supports a presumption that the person is a servant. *S & F Corp. v. Bilandic* (1978), 62 Ill. App. 3d 193, 198.

■ The alleged violation as to Robert Smyth was evidenced by the fact that he was seen on the premises 20 minutes after the grace period expired, carrying on a conversation in the doorway. This does not support a closing hour violation where the record shows, as here, that plaintiff attempted to enforce the ordinance and have the patron removed from the premises. It has been held that revocation of a liquor license for the violation of an ordinance prohibiting "tumultuous conduct" is improper where the record shows the bartender attempted to quell the disturbance. *Beer & Brat, Inc. v. Liquor Control Com.* (1976), 44 Ill. App. 3d 713, 715.

■ The proof under the charge that plaintiff permitted alcoholic beverages dispensed under its license to be consumed on public property

was also insufficient. From our examination of the ordinance it is clear that it is directed to the patron and not the licensee. A licensee cannot be held responsible for conduct over which he has no control. *Beer & Brat, Inc.*, at 715; *Middleton v. License Appeal Com.* (1974), 20 Ill. App. 3d 534, 537. Compare *Jager v. Illinois Liquor Control Com.* (1979), 74 Ill. App. 3d 33, 41.

The more troublesome question is whether Hansmar did "suffer or permit any minor to be or remain in * * * licensed premises * * * [excepting] any minor who is accompanied by his or her parents or guardian * * *." (West Chicago Liquor Control Ordinance, No. 1142, §24—3.) There is sufficient proof in the record that there were several minors in the Tumble Inn for at least a short period of time but the real question is whether the tavern owner did "suffer or permit" them to be present.

● 5, 6   The mental state contemplated by the terms "suffer or permit" is in question. We conclude that the use of the quoted words evinces the legislative intent to require proof of either authorization, knowledge, or at least a recklessness in failing to know. (*Cf.* W. LaFave & A. Scott, Criminal Law §32, at 226 (1972); *Town of Collinsville v. Scanland* (1871), 58 Ill. 221, 225; *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 467; *Easy Life Club, Inc. v. License Appeal Com.* (1974), 18 Ill. App. 3d 879, 883; *Hi-Hat Lounge, Inc. v. Illinois Liquor Control Com.* (1968), 97 Ill. App. 2d 443, 448.) The only evidence presented was that Kudzna and Boddie were in and out of the premises and had been seen entering and leaving the premises after being inside for approximately 15 to 20 minutes; while Gangestad was on the premises for only "a couple of minutes" while his older brother purchased a six-pack of beer. There is no evidence that plaintiff or his employees knew that the minors were present. In addition there is no evidence that any of the three were served liquor and therefore no evidence from which knowledge of their presence could be inferred. Since the officers could not see the Galena Street entrance it is not even clear that the minors were on the premises as long as 15 minutes, for they may have gone in and out of that entrance unobserved.

In so holding, however, we reject the contention that it was necessary to prove not only the presence of the minors on the premises but knowledge by the licensee that they were minors. The legislative plan to regulate the particular evil involved would be defeated if knowledge of minority were also required to be proved in addition to knowledge of the presence of the persons who were proved to be minors. Proof of knowledge of minority is customarily only required when a statute expressly contains the word "knowingly." See Annot., 12 A.L.R.3d 991,

1002 n. 5 (1967). See also *City of West Allis v. Megna* (1965), 26 Wis. 2d 545, 133 N.W.2d 252.

The judgment is affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.