ROACH ENTERPRISES, INC., d/b/a Chicago Players, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees and Cross-Appellants.

First District (6th Division)   Nos. 1—95—1446, 1—95—1555 cons.

Opinion filed January 12, 1996.

Elliot T. Price, of Chicago, for appellants.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Meera Werth, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

On June 19, 1992, the Chicago police raided Chicago Players (Players), a tavern, restaurant and amusement arcade, pursuant to a search warrant and seized six unregistered, and hence by municipal ordinance, illegal handguns hidden in a pizza box. A Players employee was attempting to take them out a rear exit when the police arrived. On September 3, 1992, Chicago police discovered a person under the age of 21 in the tavern, also in violation of a municipal ordinance.

Subsequently, the defendant, Richard M. Daley, acting through the Mayor's License Commission and the Local Liquor Control Commission (LLCC) in his capacity both as mayor and as local liquor control commissioner of the City of Chicago, sought and obtained the revocation of the liquor and nonliquor licenses held by the plaintiff, Roach Enterprises, Inc. (Roach), which is owned by the plaintiff, Steven Incrocci, and which operated Players. The defendant, License Appeal Commission of the City of Chicago (LAC), affirmed the revocation of the liquor license.

The plaintiffs filed for review of all of the revocations in the circuit court, where the judge affirmed the liquor license revocation, but reversed the revocation of the plaintiffs' nonliquor licenses. As they did in the circuit court, the plaintiffs contend that revocation of Roach's liquor license was an excessive and arbitrary sanction in light of the evidence. The defendants argue that the judge, having affirmed the liquor license revocation, was required to affirm the revocation of the remaining licenses, as well. This court has stayed the revocation of the liquor license pending the outcome of this appeal.

The mayor initiated these license revocation proceedings pursuant to the Liquor Control Act of 1934 (Ill. Rev. Stat. 1991, ch. 43, par.

93.9 *et seq.* (now 235 ILCS 5/1—1 *et seq.* (West 1992))) (the Act) and section 4—4—280 of the Municipal Code of Chicago (Chicago Municipal Code § 4—4—280 (1994)) (the Code), charging the plaintiffs with 17 violations of State law and local ordinance, including six counts of possession of unregistered firearms on the licensed premises; six counts of failure to produce a valid registration for firearms; two counts of failure to produce a valid register of firearms sold or given away; one count of selling deadly weapons without a license; one count of permitting a minor to enter or remain on the licensed premises; and one count of permitting the installation or use of a retail cigarette machine without affixing to it a valid retail tobacco tax emblem.

At a hearing on the charges before the LLCC, Chicago police officer Peter Bukiri testified that at about 10:30 p.m. on June 19, 1992, he and other officers were executing a search warrant at Players, which is located at 3640 West 59th Street, Chicago. Bukiri's primary assignment is the interdiction of guns coming into Chicago. Before entering Players, Bukiri placed a telephone call to the establishment and spoke to a woman, whom he informed that the police were on the way with a search warrant. Subsequently, Bukiri entered the front door of Players and proceeded to the rear door, where he found Officer Juan Rivera standing with a man holding a pizza warming box who said he worked as a cook at Players. Officer Bukiri looked inside the pizza warmer and found five .380-caliber Davis semiautomatic pistols and one nine-millimeter FIE spectra semi-automatic pistol. The man told Officer Bukiri that "Steve upstairs gave him the box and told him to throw it out."

Officer Rivera confirmed Bukiri's account of events. As he stood by the rear entrance to Players with his partner, the man carrying a pizza delivery box opened the rear door and began to exit. The man told them that the owner of Players told him to remove the firearms from the establishment because the police were coming. He was supposed to hide the guns, either in the car parked by the side of the building or otherwise in the alley.

Officer Bukiri went to the second floor of Players and found Steven Incrocci. According to Bukiri, Incrocci told him that the guns belonged to him and that, for the convenience of his customers, he was making gun deliveries at Players. Bukiri also found boxes of ammunition as well as forms used in conjunction with the sale of firearms.

Incrocci testified that he had purchased the confiscated weapons on May 13, 1992, and admitted that he owned them and that none of them was registered in the City of Chicago. Incrocci is a registered

firearms dealer in Justice, Illinois. Incrocci testified that he brought these weapons to Players on Sunday, June 14, 1992, as a matter of convenience. He placed them, still in their original containers, into a pizza box which was placed inside the pizza warmer. He placed the warmer inside an unused pizza oven on the second floor of Players. The second floor of Players is used only on weekends; Incrocci said he did not serve pizza during the summer months.

Incrocci denied having been informed shortly after 10 p.m. by Carolyn Mata, a Players bartender, that she had received a phone call from police warning that they were coming to Players. Nonetheless, at that precise time, Incrocci instructed his cook to take the pizza warmer containing the weapons to Incrocci's car, which was located in the alley behind Players. Incrocci also denied having told Officer Bukiri that he kept the guns at Players to make deliveries to local purchasers. However, Incrocci acknowledged that his gun dealer's license was valid only at his premises located in Justice.

Carolyn Mata was the bartender at Players on June 19, 1992. At about 10:15 p.m., Mata answered a telephone located behind the bar. Mata listened as an unidentified person stated that the police were on their way. She proceeded upstairs to tell Incrocci about the call. She did not see him place firearms in a box at that time. As she returned to the first-floor bar, she saw police arrive.

Mata was also a bartender at Players on September 3, 1992, at approximately 2:20 a.m. At that time, a group of seven customers entered and went to the back of the bar, where some pool tables were located. Mata approached the group to ask for identification. Before she could reach the group, some police officers arrived and began to check the customers for proof of age. The officers asked Mata to produce the licenses for the establishment, and one officer told Mata that the cigarette machine did not have the appropriate license displayed. Mata disputed this and stated that she pointed to a valid license on the machine. Nonetheless, the police issued a ticket for failure to have the license on the cigarette machine.

Chicago police officer Victor Delia, his partner and two additional officers were assigned on September 3, 1992, at about 2:30 a.m. to investigate whether underage people were being served alcohol at Players. When he arrived, he saw numerous "young-looking people towards the rear of the bar." He had been in the bar 10 to 12 minutes when he began to ask these people for proof that each was 21 years old. One, Christina Yglemm, was not, and Officer Delia removed her from Players. Yglemm's parents were not present at Players and did not arrive during the time in question.

Yglemm testified that she was 19 on September 3, 1992. When

she entered Players, there was a man at the door checking other people's identification, but she walked by him without incident. She was in the bar about five minutes before the police arrived. After checking identifications, Officer Delia and his partner also checked the licenses for the establishment and determined that the cigarette machine was not displaying a valid emblem. He brought this to the attention of the person on duty, whom he believed to be Mata, but she failed to produce a valid emblem.

Based on the foregoing, the LLCC found sufficient evidence to establish all of the charges relating to possession of unregistered firearms and failure to produce valid registration for firearms. The LLCC also found sufficient evidence to establish that the plaintiffs permitted a minor to enter or remain on the licensed premises and that they maintained an unlicensed cigarette machine. The LLCC found insufficient evidence to sustain the charges relating to the sale or delivery of firearms. The LLCC found that revocation of all of the plaintiffs' licenses was an appropriate sanction

> "[i]n light of the serious nature of [the firearms] violations especially since Licensee who holds a federal firearms license knows or should know the law regarding possession of firearms, in light of the fact that Licensee was obviously attempting to evade being caught with these weapons on the licensed premises, and in light of Licensee's past history."

The LLCC also found that the remaining violations, combined, were of a serious nature and in light of that and the plaintiffs' "past history," revocation was appropriate. Pursuant to its statutory authority, the LAC affirmed the revocation of the liquor license.

The plaintiffs filed a complaint for judicial review in the circuit court pursuant to the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1992)) seeking review of all of the revocations. We note that the nonliquor license revocations were reviewable only by common law certiorari. Nonetheless, the circuit court had jurisdiction over the subject matter of the nonliquor revocations because a complaint filed under the Administrative Review Law will suffice to authorize review under common law certiorari. Philger, Inc. v. Department of Revenue (1991), 208 Ill. App. 3d 1066, 1069, 567 N.E.2d 773.

The trial judge issued an order affirming the factual findings of the LLCC, as well as the revocation of Roach's liquor license. The trial judge reversed the revocation of the remaining licenses, finding "revocation was unreasonable based upon the records before the court." In his in-court comments accompanying the ruling, the judge relied primarily on the firearms violations to sustain the revocation of the liquor license.

Judicial review of an administrative agency's decisions revoking licenses is limited to whether (1) the agency's factual findings are against the manifest weight of the evidence; and (2) whether these findings support the sanctions imposed. (*Hanson v. Illinois Liquor Control Comm'n* (1990), 201 Ill. App. 3d 974, 559 N.E.2d 1092; *Byrne v. Stern* (1981), 103 Ill. App. 3d 601, 431 N.E.2d 1073.) A factual finding is against the manifest weight of the evidence only if an opposite conclusion is clearly evident from the record. (*Leong v. Village of Schaumburg* (1990), 194 Ill. App. 3d 60, 65, 550 N.E.2d 1073.) The second part of our inquiry requires us to determine only whether the LLCC "acted arbitrarily and without cause or in clear abuse of [its] discretion." (*Leong*, 194 Ill. App. 3d at 64; *Spiros Lounge, Inc. v. Illinois Liquor Control Comm'n* (1981), 98 Ill. App. 3d 280, 284, 423 N.E.2d 1366.) If any evidence in the record supports the agency's decision, that decision must be affirmed on judicial review. *Leong*, 194 Ill. App. 3d at 65.

The defendants argue that under Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), the plaintiffs have waived any challenge to the factual findings of the LLCC by failing to argue that the findings were against the manifest weight of the evidence. The plaintiffs, in their reply brief, assert a blanket challenge to all of the LLCC's factual findings, failing to point to anything in the record to support such a challenge. This type of challenge to the factual findings of the LLCC is insufficient to preserve an issue for review, especially because the findings of an administrative tribunal are accepted as *prima facie* correct. (*Spiros Lounge*, 98 Ill. App. 3d at 284.) The only factual finding the plaintiffs specifically contest is the LLCC's conclusion that they permitted a minor to enter or remain on the licensed premises in violation of section 4—60—140 of the Code.

Section 4—60—140 states:

> "It shall be unlawful for any person licensed to operate a tavern to permit any person under 21 years of age to enter or remain within the licensed premises unless such person is accompanied by a parent or guardian." (Chicago Municipal Code § 4—60—140 (1995).)

Relying on *Hansmar, Inc. v. Illinois Liquor Control Comm'n* (1979), 78 Ill. App. 3d 690, 397 N.E.2d 241, an opinion interpreting a somewhat similar municipal ordinance, the plaintiffs argue that the term "to permit" requires "proof of either [the licensee's] authorization, knowledge, or at least recklessness in failing to know" that minors are in the establishment. (*Hansmar*, 78 Ill. App. 3d at 694.) A licensee is liable for his employee's actions in this regard. *Hansmar*, 78 Ill. App. 3d at 694.

In light of *Hansmar*, we cannot agree that the plaintiffs permitted Yglemm to enter or remain within Players. Christina Yglemm testified that when she walked into Players, a man was at the door checking identifications, but she was not asked for hers. The record does not contain the testimony of the man who was tending the door. Thus, it is impossible to know if he saw Yglemm as she entered among a group of other patrons. Furthermore, she was in Players for just five minutes when the police arrived. Officer Delia testified that he was in Players perhaps another 10 to 12 minutes before he began checking identification.

■ Reviewing similar evidence, the court in *Hansmar* held that the licensee could not be charged with knowledge of the presence of minors. (*Hansmar*, 78 Ill. App. 3d at 694.) Thus, the mere fact of a minor's presence on the licensed premises does not constitute permission. The licensee must actually know or recklessly disregard evidence of the minor's presence. Although the LLCC found Officer Delia's testimony to be credible, the bartender Mata stated that she was in the process of checking identification at the same time as police. She would have undoubtedly discovered the underage Yglemm had not the police interceded. Based on the record before us, we cannot conclude that the plaintiffs possessed the requisite knowledge that the minor was within the licensed premises.

The plaintiffs' primary contention on appeal is that revocation of the liquor license was an excessive sanction in light of the record. We note initially that under the Act, "local commissioners have considerable discretion in revoking liquor licenses" for good cause. (*Leong*, 194 Ill. App. 3d at 65.) The violation of any statute, ordinance, or regulation fairly related to the control of liquor, upon liquor-licensed premises, generally constitutes cause for revocation of a license. (235 ILCS 5/7—5 (West 1992).) The plaintiffs rely on *Hanson*, 201 Ill. App. 3d at 983, and *Byrne*, 103 Ill. App. 3d at 606-07, to argue that when a licensee has little or no prior history of violations and lacked personal knowledge of the current violation, a revocation may be reversed as an abuse of discretion.

■ Here, however, although the plaintiffs did not have a substantial prior history of violations (they had a one-day suspension of the liquor license due to an on-premises fight), the plaintiffs concede, as they must, personal knowledge of the firearms violations. Incrocci acknowledged both ownership of the firearms as well as the fact that he stored them at Players for almost a week, facts upon which the LLCC relied in revoking all of the licenses. As the LLCC found, Incrocci was a federally licensed gun dealer who knew or should have known of Chicago's ban on unregistered handguns. Furthermore, In-

crocci did attempt to conceal the violation by sending his employee out to dispose of the weapons.

The law does not require that a licensee accumulate numerous violations before a liquor license revocation may be sustained. In *Sip & Save Liquors, Inc. v. Daley* (1995), 275 Ill. App. 3d 1009, 1020, the court upheld the revocation of a liquor license despite the licensee's almost spotless 17-year record where the licensee possessed just one unregistered handgun. Furthermore, in *Spiros Lounge*, 98 Ill. App. 3d at 287, the court upheld a revocation where the licensee's agent had one previous violation and had served alcoholic beverage to one minor. Like the court in *Sip & Save*, we note that the record here contains factors in favor and against revocation, and a less severe sanction could have been imposed. (*Sip & Save*, 275 Ill. App. 3d at 1020.) However, "[t]he mere fact [that] a reviewing court considers a different sanction more appropriate does not render a decision arbitrary." (*Yeksigian v. City of Chicago* (1992), 231 Ill. App. 3d 307, 312, 596 N.E.2d 10.) Here, the record supports the findings made, and we cannot say that the revocation was arbitrary or an abuse of discretion.

■ The plaintiffs also lodge Federal constitutional challenges to the revocation of their liquor license. First, they contend that the revocation constituted an excessive fine under the eighth amendment. The plaintiffs failed to raise this claim on administrative review before the LAC and, therefore, it is waived. *Caauwe v. Police Pension Board* (1991), 216 Ill. App. 3d 313, 316, 576 N.E.2d 1078; *Rispoli v. Police Board* (1989), 188 Ill. App. 3d 622, 634-35, 544 N.E.2d 1063.

■ The second constitutional challenge plaintiffs raise is that the revocation violates the double jeopardy clause of the fifth amendment because it constitutes punishment in addition to that which Incrocci incurred after pleading guilty to criminal charges for failure to register the seized firearms. We find no merit in this claim. A liquor license is a privilege voluntarily granted by the governmental entity. (235 ILCS 5/6—1 (West 1992); *Black Knight Restaurant, Inc. v. City of Oak Forest* (1987), 159 Ill. App. 3d 1016, 1018, 513 N.E.2d 109.) The revocation of licenses for violating the conditions of their issuance has long been considered a remedial sanction and not punishment for purposes of the restriction on double jeopardy. (*Larkin v. Hartigan* (1993), 250 Ill. App. 3d 969, 976, 620 N.E.2d 598, citing *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630; *Kaplan v. Department of Registration & Education* (1977), 46 Ill. App. 3d 968, 975, 361 N.E.2d 626.) We are aware of no case in which a court has held otherwise, even in light of *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, and *Department of Reve-*

*nue v. Kurth Ranch* (1994), 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, relied upon by the plaintiffs here. (See, *e.g., State v. Young* (1995), 3 Neb. App. 539, 553, 530 N.W.2d 269, 278 (noting that no appellate court has ever held that the revocation of a driver's license constitutes punishment); *People v. Marmon* (Colo. 1995), 903 P.2d 651 (revocation of lawyer's license is remedial); *Atiyeh v. Pennsylvania Liquor Control Board* (1993), 157 Pa. Commw. 28, 629 A.2d 182 (recognizing Pennsylvania court's earlier holding that liquor license revocation was remedial sanction).) Indeed, in *Halper*, the United States Supreme Court recognized that the fact that a remedial sanction may also carry, in the eyes of the sanctioned, "the sting of punishment" does not render it punishment. (*Halper*, 490 U.S. at 447 n.7, 104 L. Ed. 2d at 501 n.7, 109 S. Ct. at 1901 n.7.) We hold that the revocation of a liquor license for violating the conditions of its issuance does not constitute punishment for purposes of the restriction on double jeopardy.

■ The judge, although affirming the LLCC's findings of fact, found that revocation of the nonliquor license was unreasonable on the record. The judge noted that the operation of a gaming arcade, for instance, does not carry the "same nature of dangerousness as would a tavern where alcoholic beverages are served." In their cross-appeal, the defendants contend that the same reasoning that led the judge to affirm the revocation of Roach's liquor license required that the revocation of the remaining license be affirmed, as well. We agree and, therefore, reverse the trial judge's decision as to the nonliquor licenses.

Under section 4—4—280 of the Code, "[t]he mayor shall have the power to *** revoke any license issued under the provisions of this code for good and sufficient cause or if he determines that the licensee shall have violated any of the provisions of this code or any of the statutes of the state." (Chicago Municipal Code § 4—4—280 (1994).) As the defendants argue, section 4—4—280 is clear in its terms. Here, the plaintiffs were found to have violated at least three separate ordinances, that which prohibits the possession of unregistered firearms (Chicago Municipal Code § 8—20—040 (1995)), that which requires those who possess firearms to display a valid firearms registration on demand (Chicago Municipal Code § 8—20—150 (1995)), as well as that prohibiting the plaintiffs from permitting minors to enter the licensed premises (Chicago Municipal Code § 4—60—140 (1995)). Although we reverse the finding as to the presence of a minor on the premises, Incrocci's actions in storing unregistered firearms at Players represented a threat to the public which frequented the establishment, and the mayor acted within his authority in revoking

all city licenses. This court has affirmed the revocation of nonliquor licenses when the licensee permitted a single act of prostitution on the premises. (*S&F Corp. v. Bilandic* (1978), 62 Ill. App. 3d 193, 378 N.E.2d 1137.) The conduct in this case is no less egregious than there. We cannot conclude that the revocations were an abuse of discretion.

The order of the circuit court affirming the finding that the plaintiffs permitted a minor to enter or remain on the premises is reversed.

The order of the circuit court reversing the revocation of the plaintiffs' nonliquor licenses is reversed.

The order of the circuit court affirming the revocation of the plaintiffs' liquor license is affirmed.

This court's order staying the order revoking the plaintiffs' liquor license is vacated.

Judgment affirmed in part and reversed in part.

ZWICK, P.J., and McNAMARA, J., concur.