LONNIE AUSTIN, Appellant, v. CIVIL SERVICE COMMISSION *et al.*, Appellees.

First District (4th Division)   No. 1—91—3852

Opinion filed May 27, 1993.

Cornfield & Feldman, of Chicago (Richard J. Tupper, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Kimberly W. White, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

On March 5, 1989, Lonnie Austin (Lt. Austin), was a lieutenant in the employ of the Department of Corrections assigned to supervise the inmates in a dining room of the Joliet Correctional Center. In that capacity, Lt. Austin had control over how and when the inmates were fed and was charged with the responsibility of coordinating the movement of the inmates into and out of the dining room.

It appears from the record that inmates at the correctional facility were allowed only one tray of food at each meal. While performing his duties, Lt. Austin observed inmate Hughes get into the serving line to obtain a second tray of food. As Lt. Austin ordered Hughes to get out of the serving line and sit down, he noticed that Hughes was wearing an earring. The wearing of jewelry is prohibited in the facility and earrings are considered "minor contraband." Lt. Austin ordered Hughes to turn the earring over to him; but, before he obtained the earring from Hughes, another correctional offi-

cer notified Lt. Austin that other inmates were getting into the serving line attempting to get additional trays of food. Lt. Austin directed his attention to the serving line problem. However, after Lt. Austin quelled the disturbance, he did not seek out inmate Hughes to retrieve the earring.

When the meal period ended, Lt. Austin ordered the inmates to return to the east cell house. Inmate Hughes was one of the last inmates to leave the dining room. Lt. Austin observed that Hughes was still wearing the earring. He ordered Hughes to stop but Hughes ignored the order and proceeded down the "alley." Lt. Austin followed Hughes. Hughes refused to relinquish the earring and threatened Lt. Austin with bodily harm. At this point, about 75 inmates were walking ahead of Lt. Austin and Hughes. Lt. Austin attempted to handcuff Hughes but Hughes resisted and struck Lt. Austin. When he did so, Lt. Austin sprayed Hughes with mace. The other inmates reversed direction and ran toward Lt. Austin and Hughes. After ignoring warnings to stop and return to the east cell house, a tower guard fired a warning shot. The inmates again reversed direction and ran into the east cell house. With the assistance of another correctional officer, Lt. Austin restrained Hughes and he was taken to the shift commander's office.

As a consequence of the incident, Lt. Austin was charged with negligence and the improper handling of a contraband situation.

An employee review hearing was held on the charges against Lt. Austin after which the hearing officer recommended that Lt. Austin be suspended pending discharge.

The Department of Corrections filed a written notice of Lt. Austin's discharge for cause with Central Management Services. The notice read as follows:

"Lonnie Austin, employed by the Department of Corrections in the position of Correctional Lieutenant, is discharged for cause, in that:

On March 5, 1989, an incident occurred between Lieutenant Austin, who was assigned to the dining room, and Inmate Hughes. The incident initially began when Lieutenant Austin tried to reclaim an earring from Inmate Hughes but neglected to follow through and obtain the earring since there was another disturbance in the dining room.

While returning 5 Gallery from the dining room to the cellhouse, Lieutenant Austin saw Inmate Hughes with the earring still in his ear. When Inmate Hughes refused to relinquish the earring, Lieutenant Austin pursued him. An

altercation occurred between the two resulting in Lieutenant Austin macing the inmate. During this time, at approximately 3:50 p.m., approximately 30-40 inmates were running through the East Cellhouse, agitated, and verbally abusive towards security staff. A warning shot was fired by the yard tower officer to control the inmates running to the location of Inmate Hughes and Lieutenant Austin.

Lieutenant Austin is charged with negligence in leaving his assignment unsupervised while a gallery of inmates [was] still inside. Lieutenant Austin is charged with negligence in failing to notify his supervisor. Lieutenant Austin is also charged with the improper handling of a contraband situation in that he exercised poor judgment in not initially obtaining the contraband and dispensing of the incident.

Lieutenant [Austin] has previously received a 25-day suspension for a related offense in October of 1985, a 1-day suspension in February of 1989, and a 3-day suspension in February of 1989."

The director of Central Management Services approved the charges against Lt. Austin.

On Lt. Austin's request, a hearing was held on the charges before a hearing officer for the Civil Service Commission. The officer issued his written findings and recommendations on the charges. The officer found that Lt. Austin acted reasonably when he initially abandoned his effort to obtain the earring from Hughes in the dining room and directed his attention to the other inmates who were attempting to obtain additional trays of food; and the evidence, when viewed in its entirety, failed to support a finding that Lt. Austin either left his assignment or failed to notify his supervisor. However, the officer found that Lt. Austin used poor judgment in confronting Hughes in the alley which resulted in a potentially dangerous situation and, as a consequence, recommended that Lt. Austin be suspended from duty for 90 days in addition to his period of suspension pending his discharge. The hearing officer found that Lt. Austin's actions did not warrant discharge.

After considering its hearing officer's written findings and recommendations, the commission rendered the following decision:

"The Undersigned, having read the decision of the hearing officer dated February 13, 1990, hereby adopt said decision to the extent not inconsistent with the comments set forth below and hereby certify it to the Director of the Department

of Central Management Services, State of Illinois, for enforcement.

We do not concur with the hearing officer's analysis of the incident which is the subject of this appeal. We find that the seriousness of the incident, when viewed in light of the totality of the circumstances, warrants the discharge of Lonnie Austin."

Lt. Austin filed a complaint for administrative review in the circuit court of Cook County. After previously having heard argument and denying a motion to reconsider, the trial court found that the discharge of Lt. Austin was too harsh a sanction and, as a consequence, reversed the commission's decision and remanded the case to the commission to determine an appropriate penalty.

On remand, after taking exception to the circuit court's reduction in penalty, the commission ordered Lt. Austin suspended from duty for a period of 90 days in addition to his original suspension pending discharge.

Subsequently, the circuit court entered a final order and this appeal followed.

■ The scope of review of an administrative agency's decision to discharge an employee is a two-step process, as explained in *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. In doing so, the court must consider the agency's findings and conclusions on questions of fact to be *prima facie* true and correct. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110.) Secondly, the court must determine if the agency's findings of fact provide a sufficient basis for its conclusion that there is cause for the employee's discharge. Cause is " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " (*Department of Mental Health*, 85 Ill. 2d at 551, 426 N.E.2d at 887, quoting *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 441, 352 N.E.2d 389, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) The administrative agency must determine whether there is sufficient cause to warrant the discharge of an employee and substantial deference must be accorded to its decision. As such, the agency's decision as to whether cause for discharge exists will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. *Launius*

*v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 603 N.E.2d 477; *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 449 N.E.2d 845; *Department of Mental Health*, 85 Ill. 2d 547, 426 N.E.2d 885.

Our review of this case involves only the second prong of the test; namely, whether there was sufficient cause for the commission to discharge Lt. Austin. The trial court reversed the commission, finding that the discharge was "too harsh a sanction." However, the question for the court is not whether it would administer a more lenient sanction than discharge were it to initially determine what discipline would be appropriate under the facts of any given case. The question for the court is whether in opting for discharge, the agency acted arbitrarily, unreasonably, or selected a form of discipline unrelated to the needs of the service. (*Launius*, 151 Ill. 2d at 436, 603 N.E.2d at 484; *Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 411, 438 N.E.2d 147, 150.) However, the judgment of a trial court may be sustained on review on any ground appearing in the record regardless of whether the trial court relied on it. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.

■■ ■ Section 14 of the Illinois Administrative Procedure Act states in pertinent part:

"A final decision or order adverse to a party (other than the agency) in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accomplished by a concise and explicit statement of the underlying facts supporting the findings." (Ill. Rev. Stat. 1991, ch. 127, par. 1014.)

The commission's hearing officer, in issuing his 17-page findings and recommendation, complied in all respects with the statute. The commission's decision is quite another matter; it is wholly conclusory. It states that it adopts the decision of the hearing officer to the extent that it is not inconsistent with its conclusion that the seriousness of the incident warrants the discharge of Lt. Austin. The commission never rejected any of the hearing officer's findings of fact nor did it make any findings of fact inconsistent with those of the hearing officer. A reader of the commission's decision is left to divine which portion of the hearing officer's decision it found to be inconsistent with its conclusion. The decision of the commission is void of any statement of fact to support its findings that the seri-

ousness of the incident at issue warranted the discharge of Lt. Austin. In section 14 of the Act, the legislature has specifically mandated that the final decision of an administrative agency contain an explicit statement of fact. Because the commission failed to set forth any facts in its opinion to support its decision to discharge Lt. Austin, its decision was arbitrary and unreasonable. *Bell v. Civil Service Comm'n* (1987), 161 Ill. App. 3d 644, 515 N.E.2d 248; *Bodine v. Civil Service Comm'n* (1985), 134 Ill. App. 3d 341, 480 N.E.2d 160.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and CAHILL, JJ., concur.