Second Division

March 30, 1999

No. 1-98-1859

DELWIN McCLOUD, ) Appeal from the 

) Circuit Court of 

Petitioner-Appellant, ) Cook County.

)

v. )

)

MATT L. RODRIGUEZ, Former ) 

Superintendent of Police; THE CITY OF ) 

CHICAGO, a Municipal Corporation; )

and THE POLICE BOARD OF THE )

CITY OF CHICAGO, ) Honorable

) John K. Madden,

Respondents-Appellees. ) Judge Presiding.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following an administrative hearing, the Police Board of the City of Chicago (Board) discharged petitioner Delwin McCloud from the Chicago police department (Department) for violating certain departmental rules and regulations.  On administrative review, the circuit court of Cook County confirmed the Board’s decision.  McCloud appeals.  We have jurisdiction under Supreme Court Rule 301, allowing appeals from final judgments.  155 Ill. 2d R. 301.  

On review, we find that the Board may correct clerical errors in issued decisions by filing a 
nunc pro tunc
 decision even though a petition for administrative review has already been filed in the circuit court.  We also find that the Board’s findings of fact are supported by the manifest weight of the evidence and that the Board's decision to discharge McCloud from the Department was reasonable and appropriate.  We therefore affirm.

I. FACTS

On the evening of November 18, 1995, Julienne Phillips McCloud (Phillips), a corrections officer, paged her husband, McCloud, to obtain proof of insurance she needed as a result of her involvement in a car accident.  McCloud was at a dinner party and refused to bring the material to Phillips.  The following morning, McCloud returned home at approximately 6 a.m.  While he was dressing for work in their bedroom, he and Phillips began arguing.  The argument flared into a physical altercation.  During the fight, McCloud struck Phillips several times on her head and body.  Phillips reached for her service revolver, which she kept underneath her pillow, and shot McCloud.  McCloud shot back, striking Phillips in her abdomen.  Following the shootings, McCloud made a series of telephone calls to family members.  He also spoke with police.  He informed the police that he would shoot anyone who entered his house.  Nearly eight hours later, McCloud finally surrendered to police.  It was only then that Phillips and McCloud received medical attention.

The superintendent charged McCloud with numerous rule violations including: Rule 2, any action or conduct which impedes the Department's efforts to achieve its policy and/or goals and/or brings discredit upon the Department; Rule 6, disobedience of an order or directive, whether written or oral; Rule 8, disrespect to or maltreatment of any person, while on or off duty; Rule 9, engaging in any unjustified verbal or physical altercation with any person, while on or off duty; Rule 28, being absent from duty without proper authorization; and Rule 38, unlawful or unnecessary use or display of a weapon.

The superintendent called numerous witnesses against McCloud.  McCloud’s father, Roosevelt McCloud, testified that he went to McCloud’s house after his wife received a call from McCloud.  Upon arriving, he went to McCloud’s neighbor’s home, where he spoke to McCloud on the telephone.  McCloud told him that he would shoot the first person who came through his door.  

Officer Michael Rigoli testified that he and his partner responded to the scene after being notified by police radio that a woman had been shot.   They knocked on the doors but could not enter.  Soon after, McCloud's neighbor came out of her house, informed Rigoli that McCloud was on her telephone, and asked him if he wanted to speak with McCloud.  When Rigoli spoke to him on the telephone, McCloud told him that he had a gun, that he shot his wife, and that he would not come out.

Detective Michael Hughes testified that he arrived at McCloud’s house at approximately 7:30 a.m.  Upon arriving, he went to the neighbor’s house and spoke to Roosevelt McCloud, who asked him to speak to McCloud over the telephone.  McCloud told Hughes that he would "shoot the first guy through the door" and then hung up the telephone.  Similarly, the second time Hughes called McCloud, McCloud told him that he was "going to shoot the first policeman through the door" and, again, hung up the telephone.

Lieutenant David Cristovic testified that he arrived at McCloud’s home at approximately 7:30 a.m. and that the doors to McCloud’s home were locked.  He also stated that there was no response from inside the house when he knocked.  Upon being told that McCloud would shoot 
any officer attempting to enter his home, he requested the hostage and barricade team’s assistance.

Commander John Kennedy of the hostage and barricade team testified that the use of the team was necessary.  Two people had been shot and McCloud threatened 
to kill any officer attempting to enter his residence.  The most important concern during the incident, however, was the safety of Phillips, which was difficult to ascertain because the team was unable to communicate with her during the standoff.

McCloud also spoke to various family members on the telephone.  Alvin Phillips, Phillips’ brother, testified that at approximately 7 a.m. McCloud called him and stated that he had shot his wife and that she was dead.  Alvin then used another telephone to call police.

Wanita Phillips, Alvin’s wife, also spoke to McCloud on the telephone.  She testified that McCloud told her that Phillips shot him, that he then shot Phillips, and that he intended to shoot himself.  Although McCloud refused to do so, Wanita insisted that he contact the paramedics.  Similarly, Clyrisse Howard, one of Phillips' friends, recounted that McCloud told her that both he and Phillips were shot and that Phillips was unconscious and could not speak to her. 

Testifying on his own behalf, McCloud asserted that on the night prior to the incident Phillips paged him from the police station requesting an insurance card.  However, she became angry with him when he refused to bring it to her.  Upon arriving at home at approximately 6 a.m., an argument ensued, eventually becoming a physical altercation.  He stated that they punched each other, that Phillips then fired her gun at him, and that the bullet grazed his stomach and entered his wrist.  He attempted to disarm Phillips, at which point Phillips grabbed his gun from his waistband.  At some point during the struggle, the gun discharged.  When Phillips reached for her gun, he responded by shooting in her direction.  He could not indicate which shot injured Phillips.

Although McCloud knew that Phillips was shot, he did not call for an ambulance because he believed that Alvin Phillips would do so after speaking with him.  He further claimed that, after he was shot, he could not leave his house during the standoff because he was too weak and the pain was too severe.   However, he felt much better eight hours later when his wound stopped bleeding.  He stated that he was confused during the entire episode.

Phillips testified that she and McCloud had an argument over the telephone the night before the incident regarding an insurance card.  She also asserted that McCloud hit her on the following morning and that they struggled with a gun, although she could not remember why she shot him.  She testified that her gun was under her pillow because she keeps it there when she is home alone.  Phillips could not recall any further details as to what happened. 

Watch Commander Michael Acosta and Sergeant Keith Griffiths testified regarding McCloud's absence from work.  Acosta instructed Griffiths to call McCloud by telephone to find out why he had not been at the 7 a.m. roll call.  When Griffiths reached McCloud and asked whether he intended to report to work, McCloud merely responded “no” without explanation and hung up the telephone.  When Acosta had another officer attempt to contact McCloud, he again hung up the telephone without explanation.  Consequently, it was recorded on the police roll that he was absent without permission.

The Board found McCloud guilty of engaging in prohibited conduct outlined in Rules 2, 6, 8, 9, 28, and 38.  Specifically, the Board found that McCloud violated Rule 2 by acting in a manner that impeded the Department's policies and/or brought discredit upon the Department, Rule 6 by disobeying an order or directive, Rule 8 by disrespecting or maltreating a person, Rule 9 by engaging in an unjustified verbal or physical altercation, Rule 28 by being absent from duty without proper authorization, and Rule 38 by unlawfully or unnecessarily using or displaying a weapon.   

After McCloud filed a complaint for administrative review of the Board’s decision in the circuit court of Cook County, the Board issued an amended version of its decision, correcting the findings section of the original decision.  The original decision's findings of guilt as to certain Rules were incorrectly paired with fact applications supporting other rule violations.  Additionally, the original decision was devoid of a finding of guilt and fact application relating to Rule 6.  The Board's charges and decree in the original decision, however, were left unchanged in the amended decision. 

II.  ANALYSIS

McCloud contends that the Board was without jurisdiction to modify and amend its decision after he filed his petition for administrative review in the trial court.  Specifically, he argues that the amended decision is void for want of jurisdiction and that we must proceed solely on the basis of the original decision, which he claims is fatally deficient in its factual findings.  We disagree and find that the Board had inherent authority to issue the amended decision as a 
nunc pro tunc
 decision intended to correct glaring clerical errors contained in the original.  McCloud also contends that the Board's findings of fact are against the manifest weight of the evidence and that there was an insufficient basis to discharge him from the Department.  Nevertheless, concluding that the record supports all of the Board's findings of guilt except as to Rule 6, we find that the Board's discharge of McCloud from the Department was reasonable and appropriate.  

A.  Amended Decision

The Board's original decision, which was filed on April 11, 1997, and the amended decision are comprised of three parts.  The first part lays out the charges against McCloud.  The second part
 makes findings of guilt relating to each alleged violation followed by a discussion of supporting facts.  The third part contains the Board's decree.  Our attention here is on the second part; specifically, we must focus on the errors and omissions of the original decision's findings and the respective corrections contained in the amended decision.

  First, the original decision's findings incorrectly found McCloud guilty of violating Rule 1, a rule he was never charged with violating, while supporting this erroneous finding with a discussion of the facts supporting McCloud's violation of Rule 2.  The discussion clearly relates to McCloud's violation of Rule 2 because the language of Rule 2 is substantially incorporated into it.  Next, the findings section finds McCloud guilty of violating Rule 2, while supporting this finding with a discussion of the facts supporting McCloud's violation of Rule 8.  Similar to the first error, it is clear that the discussion here relates to Rule 8 because the language of Rule 8 is substantially incorporated into the discussion.  Lastly, the Board failed to include a finding of guilt or discussion relating to McCloud's alleged violation of Rule 6.  Having discovered the above errors after McCloud filed a petition for administrative review in the circuit court, the Board issued its amended decision on July 3, 1997, correcting all of the above errors.   

McCloud contends that the Board did not have authority to modify its decision after he filed his petition for administrative review.  Specifically, he argues that the Board was divested of its jurisdiction following the filing of his petition for administrative review and that any modification of its decision was improper under the law.  See 735 ILCS 5/3-104 (West 1996) ("The court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition of the action").  As such, he requests that this court limit its review to the unmodified version of the Board’s decision.  

Neither McCloud nor our research has revealed authority discussing an administrative agency's ability to modify a decision after jurisdiction for review of that decision has vested with the circuit court.  However, case law that is somewhat analogous to the situation here provides that a trial court has inherent authority to enter a 
nunc pro tunc
 order at any time to correct clerical errors or matters of form in a prior order or other written record of judgment 
to ensure that the record conforms to the judgment actually rendered by the court.  
Beck v. Stepp
, 144 Ill. 2d 232, 238 (1991); see 
In re Marriage of Hirsch
, 135 Ill. App. 3d 945, 954-55 (1985) (affirming a 
nunc pro tunc 
order that was entered after jurisdiction was lost by circuit court); 
Johnson v. First National Bank
, 123 Ill. App. 3d 823, 827 (1984) (affirming a 
nunc pro tunc
 order that was entered after the circuit court's term terminated).  This inherent power rests upon the courts' right and duty to ensure justice has been rendered to every party, the courts' control over their records, and the courts' authority to make those records speak the truth.  
In re Marriage of Hirsch
, 135 Ill. App. 3d at 954.  However, a 
nunc pro tunc
 order may not be used to supply omitted judicial action, to cure a jurisdictional defect, 
or to correct judicial errors that are the result of deliberate but erroneous judicial reasoning
.  
Beck
, 144 Ill. 2d at 238; 
In re Marriage of Petraitis
, 263 Ill. App. 3d at 1039.  
Moreover, "
[
n
]
unc pro tunc
 orders must be based upon definite and precise evidence in the record. [Citation.]  The certainty of evidence must be assured without reliance upon the memory of the judge or any other person, and a 
nunc pro tunc
 order cannot be based upon 
ex parte
 affidavits or testimony."  
Beck
, 144 Ill. 2d at 239.   This evidence must clearly show "that the order being modified failed to conform to the decree actually rendered by the court."  
Beck
, 144 Ill. 2d at 238. 

Although this case law is not 
directly on point, we see no reason why the Board should not posses a similar ability to modify clerical errors in decisions it has already rendered.  To that end, we believe that the above alterations relating to Rules 2 and 8 were corrections of clerical errors and not additional judicial actions.  Specifically, as to Rule 2, although the original decision found McCloud guilty of Rule 1, it is clear that the findings supporting that conclusion were addressing McCloud's violation of Rule 2.  This much is obvious by the fact that those findings parrot the language of Rule 2.  Likewise, as to Rule 8, although the original decision found McCloud guilty of Rule 2, those findings addressed McCloud's violation of Rule 8.  As with Rule 2, this is clearly apparent because the language in the original findings parrots the language from Rule 8.  Thus, we believe that the discussions following the findings of guilt in the original decision are sufficient to provide evidence that the corrections made to the above findings of guilt were clerical in nature.  Moreover, these modifications do not conflict with the Board's decree in its original decision.  That decree stated in pertinent part: 

"IT IS HEREBY ORDERED that Respondent, *** as a result of having been found guilty of violations of Rules 2, 6, 8, 9, 28, and 38, *** be and is hereby separated and discharged from his position as a Police Officer in the Department of Police and from the services of the City of Chicago."  

We decline, however, to determine whether the inclusion of a finding of guilt and discussion of facts relating to Rule 6 in the amended decision was a mere correction of a clerical error or additional judicial action.  As will be seen below, a finding that McCloud violated Rule 6 is unnecessary to support the discharge of McCloud from the Department.  Therefore, for purposes of our discussion of the remaining issues, we will refer to the amended decision to the extent that it finds McCloud guilty of violating Rules 2, 8, 9, 28, and 38.

B.  Manifest Weight of the Evidence

McCloud argues that the evidence is insufficient to support the Board’s conclusions that he violated Rules 2, 6, 8, 9, 28, and 38.  Notwithstanding Rule 6, our review of the evidence leads us to conclude that the manifest weight of the evidence supports the Board's findings of fact.

A reviewing court considers the Board’s findings of fact to be 
prima facie 
true and correct.  
Launius v. Board of Fire & Police Commissioners
, 151 Ill. 2d 419, 427 (1992).  The proper inquiry on review is whether the Board’s findings are contrary to the manifest weight of the evidence.  
Launius
, 151 Ill. 2d at 427.  The Board’s findings will be deemed contrary to the manifest weight of the evidence only where the opposite conclusion is clearly apparent.  
Ross v. Civil Service Comm’n
, 250 Ill. App. 3d 597, 600 (1993).

The Board found McCloud guilty of engaging in the following prohibited conduct:  Rule 2, actions impeding the Department's policies or discrediting the Department; Rule 6, disobedience of an order or directive; Rule 8, disrespect or maltreatment of a person; Rule 9, unjustified verbal or physical altercation with any person; Rule 28, absence from duty without proper authorization; and Rule 38, unlawful or unnecessary use or display of a weapon.  

However, before addressing whether the evidence supports the Board's determinations, we first address McCloud's contention that the Board based some of its findings on inadmissible evidence.  Specifically, he argues that to find his use of physical force and his firearm unnecessary or unjustified, the Board must have considered the testimony of Officer Hughes that restates the substance of Phillips' statement she gave while in the hospital.  This hearsay testimony of Officer Hughes, which was omitted in the facts section of this opinion, describes in detail the events of the morning of November 19.  In sum, it unequivocally describes McCloud as the aggressor and Phillips as the defender.  McCloud argues that, while such testimony was admissible for impeachment of Phillips’ testimony, it was inadmissible as substantive evidence.  According to McCloud, without this evidence the Board's findings in regards to Rules 8, 9, and 38 cannot stand.  

The superintendent argues that it was admissible as substantive evidence under an exception to the hearsay Rule.  Specifically, he argues that a witnesses’ feigned lapse of memory acts to affirm the truth of the matter asserted in a prior inconsistent statement.  The cases the superintendent cites, however, 
People v. Jenkins
, 104 Ill. App. 3d 522 (1982), and 
People v. Amato
, 128 Ill. App. 3d 985 (1984), only support that proposition where the prior inconsistent statement was grand jury testimony and testimony given during an administrative hearing, respectively.
  
Because Phillips' statement was not given under similar circumstances, the exception to the hearsay rule stated in 
Jenkins
 and 
Amato
 is inapplicable to the instant case.   

Nonetheless, contrary to McCloud's assertions, there is no indication from the record or the Board's decision that it considered this evidence beyond impeachment purposes.  Moreover, although Philip's statement given at the hospital is compelling, it is not necessary to support the Board's decision.

Rather, even without the hearsay evidence, the record supports the Board's determination that McCloud violated Rule 8 by disrespecting or mistreating an individual, Rule 9, by unjustifiably engaging in a verbal or physical altercation with another person, and Rule 38, by unlawfully or unnecessarily using or displaying a weapon.  The record shows that McCloud beat Phillips about her head.  Not only did Phillips testify that McCloud hit her about the head with his hands, photographs taken after the episode show injuries consistent with this testimony.  In addition, each witness who testified as to what McCloud told him or her over the telephone during the episode asserted that he admitted shooting Phillips after she shot him.  As to whether his conduct was necessary or justified, the Board could have easily inferred from the circumstantial evidence that it was neither.  Here, McCloud carried out an eight-hour armed standoff with police following the beating and shooting of Phillips.  He not only stated that he might shoot himself, but he also threatened to shoot anyone entering his house.  From this evidence, the Board could have drawn a strong inference that McCloud did not believe that his conduct was necessary or justified.  Although McCloud testified that he struggled to disarm Phillips when a gun discharged and that he later shot toward Phillips while she attempted to pick up a gun from the floor, the Board was not bound to accept his version of events.  Rather, it was free to draw its own inferences and conclusions from all the evidence submitted.  As there is sufficient evidence to support a finding that McCloud violated Rules 8, 9, and 38, it cannot be said that an opposite conclusion is clearly apparent.  Thus, the Board's decision as to these rules is not contrary to the manifest weight of the evidence.

The manifest weight of the evidence also supports the Board's finding that McCloud violated Rule 2, which prohibits any action or conduct that impedes the Department's efforts to achieve its policy and/or goals and/or brings discredit upon the Department.  In support of its finding, the Board cites many of the facts supporting violations of the preceding rules.  Likewise, we find that the above evidence supporting violations of Rules 8, 9, and 38 equally supports the finding that McCloud violated Rule 2.  Other evidence of McCloud's conduct also supports a finding that he violated Rule 2.  By refusing the police admittance into his home, McCloud effectively deprived Phillips of necessary medical care.  Furthermore, McCloud's conduct required the hostage and barricade team to be deployed to the scene.  Commander Kennedy asserted that the use of the hostage and barricade team was necessary because two people had been shot, the police were unable to enter the residence, and McCloud threatened to kill the police if they entered his home.  This evidence, together with the evidence supporting violations of Rules 8, 9, and 38, supports the Board's finding that McCloud's conduct was the type that impedes the achievement of the Department's policies as well as discredits the Department.  Accordingly, the Board's findings as to Rule 2 were not against the manifest weight of the evidence. 

Lastly, McCloud's violation of Rule 28, being absent from duty without proper authorization, is also supported by the evidence.  At approximately 7 a.m., Watch Commander Acosta directed Sergeant Griffiths to call McCloud to determine whether he was coming to work.  Without providing an explanation for his absence, however, McCloud hung up the telephone.  Later, Officer Acosta had another officer call McCloud.  Nevertheless, he hung up the telephone again without explanation.  The record is also devoid of any indication that McCloud explained his absence from work to his superiors at any other time.  As such, we believe this evidence sufficiently supports the Board's determination that McCloud was absent from duty without authorization.  

C.  Sufficient Cause for Discharge

Finally, McCloud contends that the Board's conclusion to discharge him from the Department was arbitrary and unreasonable and should be reversed.  We disagree.  

When faced with a challenge of the Board's decision to discharge an officer from the Department, the court must determine whether the Board's factual findings provide a sufficient basis for a finding of cause to discharge.  
Austin v. Civil Service Comm'n
, 247 Ill. App. 3d 399, 403 (1993).  "Cause is ' "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. " ' "  
Austin
, 247 Ill. App. 3d at 403, quoting 
Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n
, 85 Ill. 2d 547, 551 (1981), quoting 
Kreiser v. Police Board
, 40 Ill. App. 3d 436, 441 (1976).  "The administrative agency must determine whether there is sufficient cause to warrant the discharge of an employee and substantial deference must be accorded to its decision.  As such, the agency's decision as to whether cause for discharge exists will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service."  
Austin
, 247 Ill. App. 3d at 403.

In this case, the evidence in conjunction with reasonable inferences supports the discharge of McCloud from the Department.  McCloud unjustifiably beat his wife about her head and shot her in the abdomen with his service revolver.  Instead of seeking medical attention for her wounds, he held her hostage for approximately eight hours while the police surrounded their home.  He also threatened to shoot whoever came into the house.  His actions required the police to utilize its hostage and barricade team as well as other personnel to monitor the situation and seek a peaceful solution.  Nevertheless, McCloud contends the evidence is insufficient to support the Board’s findings that McCloud unjustifiably used physical force as well as his firearm against Phillips.  Even assuming 
arguendo
 that this is true, the totality of McCloud's conduct is clearly detrimental to the discipline and efficiency of the department and undermines its reputation.   " 'It is apparent that a police officer who does not abide by the laws that he has a duty to enforce will impair the discipline and efficiency of the police force.' "  
Kappel v. Police Board of the City of Chicago
, 220 Ill. App. 3d 580, 591 (1991), quoting 
Jones v. Civil Service Comm'n
, 80 Ill. App. 3d 74, 76 (1979).  Undoubtedly, sound public opinion recognizes that McCloud's conduct constitutes good cause for his discharge.  Thus, we find the Board's decision to discharge McCloud from the Department and any further service for the City of Chicago to be reasonable and appropriate.

III.  CONCLUSION

For the reasons stated above, we affirm the circuit court's confirmation of the Board's decision.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.