2024 IL App (1st) 211635-U

No. 1-21-1635

Order filed May 15, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DEPARTMENT OF VEHICLE SERVICES, SECRETARY OF STATE, STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| ILLINOIS SECRETARY OF STATE MERIT COMMISSION and TERESA COLEMAN, | ) ) ) | No. 21 CH 2587 |
| Defendants, | ) ) | |
| (TERESA COLEMAN, | ) ) | Honorable |
| Defendant-Appellant). | ) ) | Raymond W. Mitchell, Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices D.B. Walker and R. Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the trial court, which reversed a decision by the Illinois Secretary of State's Merit Commission and reinstated a decision to discharge a Department of Vehicle Services employee, is affirmed.

¶ 2    On May 26, 2021, plaintiff Department of Vehicle Services (Department), part of the Office of the Illinois Secretary of State (Secretary), sought judicial review of a final administrative decision issued by the Secretary's Merit Commission (Commission) on April 21, 2021. The Commission determined that defendant Teresa Coleman should be suspended for 180 days and reversed an earlier determination by the Secretary's Department of Personnel to terminate defendant's employment. Upon judicial review, the trial court reversed the Commission's decision and reinstated the determination to terminate defendant's employment.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5    Until August 12, 2020, defendant was employed by the Department as a cashier at a driver services location on 99th and King Drive in Chicago, Illinois. On August 12, 2020, Stephen J. Roth, the Director of the Secretary's Department of Personnel, sent plaintiff a letter notifying her that she was being considered for discharge and that she was suspended immediately. Defendant was accused of making a false written or oral report and two different charges of failure to cooperate and provide truthful answers in an official investigation. After defendant was permitted to respond in writing, Roth followed up with another letter on September 17, 2020, informing plaintiff that her employment was terminated the same day. Defendant subsequently appealed to the Commission and a hearing commenced on February 11, 2021. The Secretary was represented by two attorneys from the Office of the Illinois Attorney General, while defendant represented herself *pro se*. The following is a summary of the evidence from the hearing.

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6    On June 8, 2020, Derry Pierce went to the Department's location at 99th and King Drive to renew his registration for a truck and a motorcycle that he owned. As part of COVID-19 protocols, there was a line specifically for registration renewal where customers did not have to exit their vehicles. Defendant's role that day was as a "runner," which involved going to the customers in their cars, bringing the customer's credit card and receipt inside to the cashier to process the transaction, and bringing the customer's renewed registration sticker back out to the car. Defendant approached Pierce, who gave her the renewal card for his motorcycle, driver's license and credit card, and verbally told her the license plate number for his truck. Defendant went inside and returned with Pierce's renewed motorcycle sticker and informed him that the truck's license plate, as described, did not exist. Pierce showed her a photo of the license plate and defendant went back inside. When she returned, she told him that his plate was expired and he would have to return the following day to purchase a new one. Pierce maintained that the plate was not expired, and then he gave defendant his license and credit card and demanded a refund on "everything," including the registration for the motorcycle. According to Pierce, defendant informed him that she could not provide him with a refund for the registration, and threw Pierce's belongings into the vehicle. Pierce exited the vehicle and confronted defendant from, according to him, "10 or 15 feet" away. Pierce demanded a refund again and defendant walked away with the unsigned receipt for the motorcycle registration.

¶ 7    Defendant went into the facility's annex and asked for a manager to assist her. Marla Sims-Rebeles, an assistant manager, investigated and found Pierce's plate number in the computer system and it was not expired. She gave Pierce the renewed registration for the truck and the receipt. After Pierce signed the receipt for the truck registration, Sims-Rebeles asked for Pierce's

receipt for the motorcycle registration. Pierce informed her that defendant took it. Sims-Rebeles went to find it and when she returned, she told Pierce that he had already signed it. Pierce examined the receipt for the motorcycle registration and said that the signature was not his. Sims-Rebeles voided the transaction for the motorcycle registration and completed a new transaction with a new receipt for Pierce to sign. According to Sims-Rebeles, defendant was a dependable and reliable employee who would take accountability for mistakes or wrongdoing.

¶ 8    Defendant's statement to the Secretary's Department of Police was admitted into evidence. It stated that Pierce shoved the receipt and pen back toward defendant after she informed him that she could not renew the plate for Pierce's truck. She stated that the pen must have made contact with the receipt as she was grabbing it.

¶ 9    Defendant's response to Roth's suspension notice was also admitted into evidence. In it, defendant stated that she did not write anything on the receipt and that it must have been done by Pierce because Pierce was "holding the controlled pen and inversely [*sic*] made the markings as he was starting to sign and then stopped because he got upset." Defendant stated, when she told Pierce his truck registration could not be renewed, he got "loud and aggressive," and then exited his car and "got in [her] face." Pierce, who was a police officer, also produced his badge, which defendant interpreted as an attempt to intimidate her. She also noted that a typographical error resulted in her initial belief that Pierce's truck plate did not exist. Defendant claimed the entire incident was "fueled by emotions and miscommunication not fraud and forgery."

¶ 10    Kamilah Kindle, a manager at the 99th and King Drive location, testified that she was working the cash register on June 8, 2020, and that defendant brought her a signed receipt for Pierce's transaction. It was office policy to note if a customer refused to sign a receipt, but that

failure to sign a receipt did not invalidate the transaction. No one else handled the receipts for the day after they were placed in the register and Kindle believed Pierce's receipt had a full signature on it rather than an accidental mark. When she compared the signatures on the first receipt for the motorcycle registration and the receipt for the truck registration, she described them as "completely different." She said defendant was a "fine employee" who was not known to violate policies.

¶ 11 Raymond Mikula, the Chief Deputy Director of Vehicle Services, testified that the Department's training for new employees focused in part on handling sensitive information like credit cards. If a cashier neglects to follow established protocol for credit cards and receipts, they may be subject to "progressive discipline, up to and including discharge." He stated that if protocols for credit cards and signatures are not followed, it would "open the office up to potential problems with relation to ownership of vehicles," and "if it's related to a credit card, we'd be in breach of contract with the credit card processing company, which would put all of our departments at risk." Mikula testified that defendant had only one prior disciplinary incident where she was given a warning for tardiness.

¶ 12 Gina DiCaro, the Chief Deputy Director of Personnel, testified that the Secretary employs a progressive discipline policy unless the violation is so severe that progressive discipline would not be an adequate remedy. However, she explained that progressive discipline is meant to be a training tool and, in some infractions, it is apparent that a lack of training is not the issue and it is necessary to discharge the employee. In determining whether an infraction warrants discharge, the Department looked at the impact the infraction had on the Department and its reputation, and the impact on the public and the customer. The Department's Code of Ethical Conduct prohibited

making a false report and set out that such an act was subject to discipline up to and including discharge. DiCaro explained that making a false report could encompass providing false details in a witness statement, providing false testimony, or signing a credit slip for a customer. She reviewed defendant's statement, as well as the receipts in question, and found defendant's statement to Department investigators that the mark on the receipt was accidental to be suspect because the "signature on the credit card receipt has loop and a swirl."

¶ 13    DiCaro believed that defendant made a false report because the investigation indicated that defendant signed Pierce's signature on the credit card receipt. She also believed that defendant failed to cooperate with an official investigation because she insisted that the signature on the receipt was an accidental mark made by Pierce. DiCaro did not believe that defendant could be trusted to follow the Secretary's rules and Code of Ethics, and that defendant's actions were the sort that reflected negatively on the Department and the Secretary. She was of the opinion that defendant's actions met the applicable standard for discharge.

¶ 14    No criminal charges were ever filed against defendant, and there were no witnesses who saw defendant sign or make any marks on the receipt. The receipts themselves were admitted into evidence. One bore a clearly recognizable signature of "Derry Pierce." The other receipt contained markings on the signature line that did not contain any recognizable letters. It was comprised of three connected and angled pen strokes that traveled up from the signature line, returned to the signature line, and then up again. The third stroke terminated in a loop that then became a horizontal line stretching to the end of the signature line. That straight line culminated in a small hook.

¶ 15     On March 24, 2021, the hearing officer Richard F. Pellegrino issued a 25-page memorandum which recommended the termination of defendant's employment. Twenty-three of those pages recited Pellegrino's factual findings from the evidence adduced at the hearing. Approximately one page of that document was devoted to a section called "Analysis." All but one of the paragraphs in the Analysis section focused on the strength of the evidence as to whether the charges against defendant were proven. The final paragraph in that section read: "Consequently, the charges of making a false report, failing to cooperate and provide truthful answers during the course of an official investigation cannot be ignored. The integrity of the Office of Illinois Secretary of State relative to the public cannot be compromised in any manner."

¶ 16     On April 21, 2021, the Commission issued its decision. The Commission, "having read and examined the proofs, oral, documentary and written," together with "the records and the findings and rulings" concurred with the hearing officer's conclusion that the charges against defendant were proven. However, the Commission found that the charges did not warrant defendant's discharge. Instead, the Commission determined that defendant should be suspended for 180 days. The Commission's decision did not make any additional factual findings or disagree with any of the hearing officer's factual findings. It also did not dispute the hearing officer's conclusion about the necessity of safeguarding the integrity of the Office of the Secretary.

¶ 17     The Secretary subsequently filed a complaint for administrative review on May 26, 2021. That complaint claimed that the Commission's decision "to reduce [defendant's] discipline from discharge to a 180-day suspension [was] arbitrary, unreasonable, detrimental to the discipline and efficiency of service of the Secretary of State, and public policy providing for the protection of citizen's sensitive personal and financial information."

¶ 18    After briefing, in which defendant represented herself *pro se*, the trial court reversed the Commission's decision. It found that the Commission "failed to substantiate its decision with support from evidence, let alone make any finding inconsistent with the hearing officer's findings, as to why the appropriate, warranted level of discipline is a suspension rather than discharge." The trial court reasoned that the Commission's decision was conclusory, and thus arbitrary and unreasonable. As a result, the trial court reinstated the Department of Personnel's decision to discharge defendant and this appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    Although it is the trial court's final judgment that gives rise to this appeal, our role is to review the decision of the Commission, and not the reasoning of the trial court. *Gatz v. Board of Trustees of Village of Maywood Police Pension Fund*, 2019 IL App (1st) 190556, ¶ 22.

¶ 21    The scope of review of an administrative agency's decision regarding discharge is a two-step process. *Department of Mental Health & Developmental Disabilities v. Civil Service Com'n*, 85 Ill. 2d 547, 550 (1981). First, a reviewing court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. *Id.* In making this determination, the findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. 735 ILCS 5/3-110 (West 2020). Here, defendant has not argued that any of the Commission's factual findings were against the manifest weight of the evidence.

¶ 22    The second step is to determine whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. *Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 551. No statutory definition of "cause" exists, and our supreme court has defined it as "some substantial shortcoming which renders the

- 8 -

employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." *Id*. The administrative agency, rather than the reviewing court, is in the best position to determine the effect of the employee's conduct on the department. *Hermesdorf v. Wu*, 372 Ill. App. 3d 842, 852 (2007). Accordingly, the question of whether cause for discharge exists should be determined by the administrative agency, and that agency's decision will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. *Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 551.

¶ 23    This appeal concerns only that second step: whether the Commission's factual findings have a sufficient factual basis to support suspension rather than discharge.

¶ 24    Plaintiff argues that this case is like *Austin v. Civil Service Com'n*. There, a corrections officer was charged with negligence and improper handling of a contraband incident. *Austin v. Civil Service Com'n*, 247 Ill. App. 3d 399, 400-01 (1993). The Department of Corrections issued a notice discharging the officer, who then requested a hearing. *Id*. at 401-02. The hearing officer recommended a 90-day suspension. *Id*. at 402. The Civil Service Commission rejected that recommendation and ordered the officer's discharge. *Id*. at 403. In doing so, it adopted the hearing officer's recommendation "to the extent not inconsistent" with its conclusion that the seriousness of the officer's conduct warranted discharge. *Id*. at 402-03. The commission's decision stated it did not concur with the hearing officer's analysis of the incident. *Id*. at 403. On judicial review, the trial court determined that discharge was too harsh of a penalty and remanded the case to the commission to determine an appropriate penalty. *Id*. at 403. The commission then imposed an

additional 90-day suspension in addition to the officer's original suspension pending discharge. *Id*. The trial court subsequently entered a final order and the officer appealed. *Id*.

¶ 25 We affirmed the judgment of the trial court. *Id*. at 404. We reasoned that the commission's decision was conclusory, never explicitly rejected any of the hearing officer's findings, and did not make any findings inconsistent with those of the hearing officer. *Id*. We noted that a "reader of the commission's decision is left to divine which portion of the hearing officer's decision it found to be inconsistent with its conclusion," and that the commission's decision failed to set forth any facts in its opinion to support its decision to discharge the officer. *Id*. at 404-05.

¶ 26 Likewise, plaintiff points to *Bell v. Civil Service Comm'n*, where the Department of Registration and Education sought the discharge of an employee for falsifying time reports. *Bell v. Civil Service Comm'n*, 161 Ill. App. 3d 644, 645 (1987). After a hearing, a hearing officer recommended a 30-day suspension, but the Civil Service Commission rejected that recommendation and ordered the employee discharged. *Id*. at 646. The trial court affirmed the commission's decision, but we reversed. *Id*. at 646, 650. We reasoned that, while the commission is not required to accept the findings or recommendations of the hearing officer, it is required to substantiate its decision by setting forth specific findings of fact or conclusions of law in support of the decision not to follow the hearing officer's recommendation. *Id*. at 649-50. We noted, conversely, there was substantial evidence in the record to support the hearing officer's "more reasonable" conclusion that the employee misunderstood how to complete the time reports. *Id*.

¶ 27 Both *Austin* and *Bell* are instructive here. Like in *Austin*, the reader of the Commission's decision is "left to divine which portion of the hearing officer's decisions it found to be inconsistent with its conclusion." *Austin*, 247 Ill. App. 3d at 404-05. The hearing officer here, after making its

findings of facts, concluded that the integrity of the Secretary cannot be compromised and that discharge was warranted. It was clear that the hearing officer saw defendant's signing of the receipt, and her subsequent denials that she did so, to be serious enough that she could no longer be trusted with handling customers' financial information. Nothing about the Commission's decision provided any insight as to how or why it disagreed with the hearing officer. To the contrary, the Commission concurred in the hearing officer's findings entirely. Clearly, the Commission believed that the less severe penalty of a 180-day suspension was more appropriate, but its decision offered nothing to substantiate why. The Commission's decision did not note any problems with the hearing officer's findings or facts that the hearing officer disregarded or weighed improperly that would explain the departure from the hearing officer's conclusions. The Commission was not required to accept the hearing officer's recommendation, but it was required to set forth findings of fact and conclusions of law that explain the departure from the hearing officer. 5 ILCS 100/10-50(a) (West 2020); *Bell*, 161 Ill. App. 3d at 649-50.

¶ 28    Defendant argues that multiple facts from the hearing testimony support suspension rather than discharge. The registration renewal transaction did not need a signature to be processed and Pierce ultimately purchased the registration sticker anyway. Defendant was never charged with a crime regarding this incident, and her disciplinary record was virtually nonexistent save for one instance of being warned for tardiness. All of these facts are arguably mitigating with respect to the seriousness of defendant's act of signing the receipt. But it must be noted that the two charges of failure to cooperate or provide truthful answers had nothing to do with the forged signature itself, and were instead related to defendant's truthfulness.

¶ 29    The hearing officer's report omitted reference to the fact that a signature was irrelevant to whether the transaction could be processed, and that defendant was not charged with a criminal offense. The report also contained no discussion of defendant's lack of disciplinary issues other than a cursory statement of fact. Evidently, the hearing officer did not believe any of these factors were enough to outweigh defendant's apparent dishonesty about signing the receipt, the danger to the relationships between the Secretary and credit card processing companies, and the overall effect on the integrity of the Secretary's office. If the Commission disagreed with that analysis, it was obligated to explain why. *Austin*, 247 Ill. App. 3d at 405; *Bell*, 161 Ill. App. 3d at 650. Without any explanation of what part of the hearing officer's findings and conclusions the Commission found objectionable or incorrect, we can only guess at why the Commission believed suspension was the appropriate punishment.

¶ 30    It is not our function to inject our own judgment about what is best into this matter, or what might be our preferred outcome. Our precedent directs us to find that conclusory decisions that do not set forth facts to support them are arbitrary and unreasonable. *Austin*, 247 Ill. App. 3d at 405; *Bell*, 161 Ill. App. 3d at 650. In this case, the Commission's failure to explain itself rendered its decision arbitrary and unreasonable.

¶ 31    Additionally, in one sentence in the appellant's brief, defendant asks that we alternatively remand this case to the Commission so that it can provide specificity for its decision. In support of this, defendant cites only generally to 735 ILCS 5/3-111, which outlines the powers of the circuit court, and provides no other argument. 725 ILCS 5/3-111 (West 2020). The failure to provide an argument as to why we should do so is fatal. *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205 (failure to cite authority or articulate an argument will result in forfeiture of that argument on

appeal). Even if we were to consider the argument that defendant raises for the first time in her reply brief, the case she cites is distinguishable. *Cruz v. Dart*, 2019 IL App (1st) 170915, ¶ 60 (remanding to the agency for clarification because there was no administrative finding that continued employment was detrimental to the agency or that termination was necessary for the "discipline or efficiency" of the agency). Here, there was clearly such a finding. The hearing officer concluded that defendant's actions threatened the integrity of the Department and the Office of the Secretary—a conclusion the Commission did not challenge or refute.

¶ 32     Accordingly, the judgment of the trial court is affirmed.

¶ 33                                   III. CONCLUSION

¶ 34     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 35     Affirmed.