HARRY GOUNARIS *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees and Cross-Appellants (The License Appeal Commission of the City of Chicago *et al.*, Defendants-Appellees).

First District (1st Division)    No. 1—99—2519

Opinion filed March 30, 2001.

Frank M. Howard, of Chicago, for appellants.

Mara S. Georges, Corporation Counsel of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE COHEN delivered the opinion of the court:

Following a hearing in license revocation proceedings, the defendant Local Liquor Control Commission of the City of Chicago (LLCC) found that the plaintiffs, licensee Harry Gounaris and D&R Management, Inc. (collectively D&R), d/b/a Shadows Night Club (Shadows), had allowed two minors, Erik Penaz and Rhonda Bolden, to enter and remain on its licensed premises on separate occasions. The LLCC also found that alcoholic beverages were sold to Bolden. As a finding of fact, the LLCC determined that the circumstances warranted a 21-day license suspension. The LLCC issued an order of suspension on July 23, 1998 (the original order), suspending D&R's license for a period of

15 days. A copy of the LLCC's findings of fact was attached to the copy of the original order served on D&R. The office of the mayor issued a concurring order of disposition also reflecting a 15-day period of suspension.

In an amended order of suspension issued November 23, 1998 (the amended order), the LLCC changed the 15-day period of suspension stated in the original order to reflect the 21-day license suspension set forth in its findings of fact. No additional copy of the findings of fact was attached to the copy of the amended order served on D&R. The office of the mayor issued an amended order of disposition also reflecting a 21-day period of suspension.

D&R appealed to the defendant License Appeal Commission of the City of Chicago (LAC), which affirmed the 21-day suspension set forth in the amended order. D&R subsequently filed a complaint in administrative review in the circuit court of Cook County. The circuit court affirmed the LLCC's findings of fact and the 15-day suspension as stated in the original order, but reversed the 21-day suspension in the amended order. D&R appeals the decision of the circuit court affirming the 15-day order of suspension. The LLCC cross-appeals that portion of the circuit court's order reversing the LLCC's 21-day order of suspension. We affirm in part, reverse in part and reinstate the amended order as affirmed by the LAC.

## Analysis

■ "Upon administrative review, the function of both the trial court and the appellate court is limited to determining whether the findings and conclusions of the administrative agency are against the manifest weight of the evidence." *Hamwi v. Zollar*, 299 Ill. App. 3d 1088, 1092 (1998). "In order to make a determination that an agency's decision was against the manifest weight of the evidence, a court must conclude that all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident." *Haynes v. Police Board*, 293 Ill. App. 3d 508, 511 (1997). " 'Because the weight of the evidence and the credibility of witnesses are uniquely within the province of the administrative agency, there need only be some competent evidence in the record to support its findings.' " *Haynes*, 293 Ill. App. 3d at 512, quoting *Jagielnik v. Board of Trustees of the Police Pension Fund*, 271 Ill. App. 3d 869, 875 (1995). "[I]t is not a court's function to reweigh the evidence or make an independent determination of the facts." *Board of Education v. Van Kast*, 253 Ill. App. 3d 295, 304 (1993).

### A. Procedural Issues

D&R's first argument is jurisdictional. The assistant corporation

counsel for the City of Chicago argued before the LAC that the amended order imposing a 21-day license suspension was issued solely on a *nunc pro tunc* basis—to correct a clerical error in the original order indicating a period of suspension of 15 rather than 21 days. Refusing to acknowledge the presence of a clerical error in the original order, counsel for D&R responded that the amended order was not a valid *nunc pro tunc* order, was issued outside the limits of the LLCC's jurisdiction and was therefore void. D&R now argues that the LAC ruled solely on this allegedly invalid order without ruling on the original order. Therefore, argues D&R, the LAC lost jurisdiction with respect to the original order by failing to rule on it within 30 days as required under section 7—9 of the Liquor Control Act of 1934 (235 ILCS 5/7—9 (West 1998)). D&R concludes that because the LAC lost jurisdiction with respect to the original order and because the amended order was invalid, the LAC was therefore without jurisdiction to render any decision against it in this case.

■ In affirming the 21-day suspension set forth in the amended order, the LAC ruled that the amended order was a proper *nunc pro tunc* order. Despite the trial court's reversal of the LAC's ruling:

> "Under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1998)), we review the final decision of the administrative agency and not the decision of the circuit court. [Citation.] While the reviewing court defers to the agency's findings of fact [citation], it conducts an independent review of its conclusions of law. [Citation.] When the agency decides a mixed question of law and fact, we review its decision under a clearly erroneous standard. [Citation.] When the issue on appeal is one of law only and involves no question of fact, we review the agency's decision *de novo.*" *Home Interiors & Gifts, Inc. v. Department of Revenue*, 318 Ill. App. 3d 205, 209 (2000).

In this case, the LAC was required to determine both whether, as a matter of fact, there was a clerical error in the original order and whether, as a matter of law, the amended order satisfied the requirements of a *nunc pro tunc* order.

We first consider whether the LAC's determination that there was indeed a clerical error in the original order was against the manifest weight of the evidence. *Hamwi*, 299 Ill. App. 3d at 1092. The trial court stated:

> "There just is nothing in the record showing how the 15 days is the mistake, rather than the 21-day period. *** So, under these circumstances, I do not find that this is a proper *nunc pro tunc* order. Because it's not based upon definite and precise evidence in the record."

We disagree. The record contains a single page, listing in 11 numbered

paragraphs the findings of the hearing officer, Deputy Liquor Control Commissioner Robert Nolan. That page is captioned as *"FINDINGS OF FACT*: 97 LR 30" (the Findings of Fact). In numbered paragraph 11, Commissioner Nolan states: "I find that based upon the totality of the circumstances, including this Licensee's prior record, the appropriate punishment is a 21-day suspension."[1]

■ At the bottom of the Findings of Fact page, the handwritten initials "WLM" may be clearly seen.[2] "WLM" stands for Mr. Winston L. Mardis, who is the director of the Mayor's License Commission of the City of Chicago and is thereby the administrative head of the LLCC under the mayor. We have long recognized that "[a]dministrative proceedings may be conducted by a hearing officer who refers the case for final determination to a decision-making body which has not 'heard' the evidence in person." *Starnawski v. License Appeal Comm'n*, 101 Ill. App. 3d 1050, 1053 (1981). The hearing officer hears the evidence and *recommends* findings and a disposition to the decision-making authority of the administrative agency. *Ramos v. Local Liquor Control Comm'n*, 67 Ill. App. 3d 340, 344 (1978). "The agency *** must make its own decision based on the evidence in the record and it may accept or reject any of the hearing examiner's recommendations." *Ramos*, 67 Ill. App. 3d at 345. The LAC could have found that by initialing the findings and 21-day suspension recommended by Deputy Commissioner Nolan and issuing a copy of those initialed findings to D&R along with the original order, Director Mardis had adopted those recommendations as the findings and disposition of the administrative agency, the LLCC. The record is devoid of a similarly initialed finding by Deputy Commissioner Nolan recommending a 15-day period of suspension. The LAC could have found from this evidence that " 'the

---

[1]We note that although the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (735 ILCS 5/3—110 (West 1998)), the appropriateness of a given sanction is not a question of fact. Rather, the matter of sanctions rests within the discretion of the administrative agency. *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 763 (1999). Thus, the mere inclusion of the 21-day period of suspension in the Findings of Fact does not entitle the 21-day period to the statutory presumption of *prima facie* correctness, and the LAC could not rely on that presumption in determining which of the two periods of suspension (15 versus 21 days) was in fact intended. 735 ILCS 5/3—110 (West 1998).

[2]In fact, the handwritten initials "WLM" appear *twice* on the Findings of Fact. The caption originally read "97 L 30." That designation was manually corrected to read "97 LR 30," with the initials "WLM" appearing directly beneath the manual correction.

[original] order [specifying a 15-day suspension] failed to conform to the decree actually rendered by the [LLCC].' " *McCloud v. Rodriguez*, 304 Ill. App. 3d 652, 659 (1999), quoting *Beck v. Stepp*, 144 Ill. 2d 232, 238 (1991). We cannot say that the LAC's ruling that there was in fact a clerical error in the original order was against the manifest weight of the evidence. *Hamwi*, 299 Ill. App. 3d at 1092.

■ We next consider *de novo* whether the amended order satisfied the legal criteria for a *nunc pro tunc* order. *Home Interiors*, 318 Ill. App. 3d at 209. A *nunc pro tunc* order is one entered merely to correct an inconsistency in a written record. We recently held that an administrative agency has the same inherent authority as a trial court to "enter a *nunc pro tunc* order at any time to correct clerical errors or matters of form in a prior order or other written record of judgment to ensure that the record conforms to the judgment actually rendered by the [agency]." *McCloud*, 304 Ill. App. 3d at 658. "However, a *nunc pro tunc* order may not be used to supply omitted judicial action, to cure a jurisdictional defect, or to correct judicial errors that are the result of deliberate but erroneous judicial reasoning. [Citations.] Moreover, '[n]unc pro tunc orders must be based upon definite and precise evidence in the record. [Citation.] The certainty of evidence must be assured without reliance upon the memory of the judge or any other person, and a *nunc pro tunc* order cannot be based upon *ex parte* affidavits or testimony.' [Citation.] This evidence must clearly show 'that the order being modified failed to conform to the decree actually rendered by the [agency].' " *McCloud*, 304 Ill. App. 3d at 658-59, quoting *Beck*, 144 Ill. 2d at 238.

■ After a careful review of the record, we find that the initialed copy of the Findings of Fact issued with the original order and indicating a 21-day period of suspension is sufficiently "definite and precise evidence" under *McCloud* to support our conclusion that the amended order was indeed a proper *nunc pro tunc* order. A copy of the hearing officer's recommended sanction, initialed by the director of the administrative agency and served upon the parties along with its order of suspension, is markedly more persuasive of the agency's true disposition of the cause before it than the nondescript " 'note, memorandum or memorial paper remaining in the files or upon the records of the court' " that our supreme court has already found to be sufficient to support a *nunc pro tunc* order. *Beck v. Stepp*, 144 Ill. 2d 232, 238 (1991), quoting *Fox v. Department of Revenue*, 34 Ill. 2d 358, 360 (1966). Moreover, *nunc pro tunc* orders are appropriate even when the order being corrected has already been appealed, as the original order had already been appealed to the LAC in the case at bar. *McCloud*, 304 Ill. App. 3d at 658.

As we hold that the amended order was a valid *nunc pro tunc* order,[3] D&R's jurisdictional argument fails: the LAC ruled on a valid order within the 30-day limit imposed under section 7—9 of the Liquor Control Act of 1934. 235 ILCS 5/7—9 (West 1998).

■ Citing section 10—50 of the Illinois Administrative Procedure Act (5 ILCS 100/10—50 (West 1998)), D&R also attacks the validity of the amended order on the basis that there was no copy of the LLCC's Findings of Fact attached thereto. The applicability of this statute is a question of law that we review *de novo*. *Home Interiors*, 318 Ill. App. 3d at 209. By its own terms, "[t]he [Administrative] Procedure Act applies to every 'agency,' as defined therein (5 ILCS 100/1—5 (West 1996)), and defines 'agency' as, *inter alia*, 'each administrative unit or corporate outgrowth of the State government that is created by or pursuant to statute, *other than units of local government* and their officers, school districts, and boards of election commissioners.' " (Emphasis in original.) *Carver v. Nall*, 186 Ill. 2d 554, 561 (1999), quoting 5 ILCS 100/1—20 (West 1996).

■ We have previously held that because the LAC is a "unit of local government," the Administrative Procedure Act does not apply to proceedings before the LAC. *Laristos, Inc. v. City of Chicago License Appeal Comm'n*, 309 Ill. App. 3d 59, 64 (1999). Our reasoning in *Laristos* with respect to the LAC is equally applicable to the LLCC. Although the Liquor Control Act of 1934 expressly adopts the Administrative Procedure Act for purposes of proceedings before the Illinois Liquor Control Commission, there is no similar provision adopting the Administrative Procedure Act with respect to proceedings before the LLCC. 235 ILCS 5/3—13 (West 1996); *Laristos*, 309 Ill. App. 3d at 62. The LLCC's jurisdiction is strictly local and is limited to the corporate boundaries of the City of Chicago. 235 ILCS 5/4—2 (West 1996). The Chicago city council is vested with authority to "fix and pay compensation" to the mayor of Chicago, as Local Liquor Control Commissioner, and to his various appointed deputies, assistants and employees. 235 ILCS 5/4—3 (West 1996). Finally, the Liquor Control Act of 1934 quite clearly establishes a *statewide* Liquor Control Commission (235 ILCS 5/3—1 *et seq.* (West 1996)), while at the same time vesting the mayor

---

[3]Even had we ruled otherwise, the 30-day time limit imposed under section 7—9 is merely directory rather than mandatory and does not serve to deprive the LAC of jurisdiction where, as here, the licensee is not required to suspend operation of its business during the pendency of its appeal. 235 ILCS 5/7—9 (West 1998); *Latin Social Club, Inc. v. Illinois Liquor Control Comm'n*, 54 Ill. App. 3d 798, 805 (1977). *Cf. Johnkol, Inc. v. License Appeal Comm'n*, 42 Ill. 2d 377, 383 (1969).

of Chicago with authority to "appoint a person or persons to assist him in the exercise of the powers and the performance of the duties herein provided for such *local* liquor control commissioner"—the LLCC. (Emphasis added.) 235 ILCS 5/4—2 (West 1996).

■ We think it beyond dispute that, like the LAC, the LLCC is a "unit of local government" within the meaning of the Administrative Procedure Act. 5 ILCS 100/1—5(a) (West 1996). Therefore, the Administrative Procedure Act does not apply to proceedings before the LLCC, and the absence of a copy of the LLCC's Findings of Fact from the amended order did not serve to invalidate the amended order under section 10—50. 5 ILCS 100/10—50 (West 1998). We therefore reverse the judgment of the trial court and affirm the ruling of the LAC finding the amended order of the LLCC to be valid and enforceable.

## B. Evidentiary Objections

Having decided the validity of the amended order, we turn now to the remaining issues on appeal. D&R argues that certain factual findings of the LLCC are against the manifest weight of the evidence and are therefore insufficient to support the LLCC's 21-day order of suspension. D&R first challenges Deputy Commissioner Nolan's finding that "on December 21, 1996, the Licensee, through its agent, permitted Erik Penaz, a person under the age of 21, to enter and remain within the licensed premises" in violation of the Chicago Municipal Code. Chicago Municipal Code § 4—60—140(a) (1990).

One of the doormen working at Shadows on the night of December 21, 1996, testified that he refused Penaz entry to the Shadows premises and that the only way that Penaz could have entered was if he had sneaked in. Based on this testimony, D&R claims that none of its agents *permitted* Penaz either to enter the Shadows premises or to remain within, and that D&R therefore lacked the necessary mental state to support a violation of section 4—160—140(a).

■ We considered this argument in *Roach Enterprises, Inc. v. License Appeal Comm'n*, 277 Ill. App. 3d 523 (1996). In *Roach*, we held that "the mere fact of a minor's presence on the licensed premises does not constitute permission [within the meaning of section 4—160—140(a)]. The licensee must actually know or recklessly disregard evidence of the minor's presence." *Roach*, 277 Ill. App. 3d at 529. "A licensee is liable for his employee's actions in this regard." *Roach*, 277 Ill. App. 3d at 528.

■ Erik Penaz offered a different account of the events of December 21, 1996, testifying that he sneaked past the doorman checking ID's at Shadows by concealing himself among a large group of

other patrons. He then proceeded to a window manned by another Shadows employee, paid a cover charge to that employee and was admitted to the Shadows premises. Penaz was able to give a detailed description of the layout of the Shadows premises, including the locations of the bar, dance floor and pool tables. Deputy Commissioner Nolan stated in the Findings of Fact that "I find the testimony of Erik Penaz to be credible and believable." Although D&R urges us to disregard this finding, the "[d]etermination as to the credibility of witnesses and the weight to be given their testimony are reserved for the administrative agency, and it is not this court's function to substitute its judgment on these issues." *Koulegeorge v. Human Rights Comm'n*, 316 Ill. App. 3d 1079, 1087 (2000).

The law is clear that D&R is liable for the actions of the Shadows employee who collected the cover charge from Penaz and admitted him to the Shadows premises. *Roach*, 277 Ill. App. 3d at 528.

> "[W]e reject the contention that it was necessary to prove not only the presence of [Penaz] on the premises but knowledge by [D&R] that [he was a minor]. The legislative plan to regulate the particular evil involved would be defeated if knowledge of minority were also required to be proved in addition to knowledge of the presence of the persons who were proved to be minors. Proof of knowledge of minority is customarily only required when a statute expressly contains the word 'knowingly.' " *Hansmar, Inc. v. Illinois Liquor Control Comm'n*, 78 Ill. App. 3d 690, 694 (1979).

Section 4—160—140(a) imposes no such requirement. After a careful review of the record, we cannot say that the LLCC's finding that D&R allowed Penaz to "enter and remain within the licensed premises" was against the manifest weight of the evidence. *Hamwi v. Zollar*, 299 Ill. App. 3d 1088, 1092 (1998).

■ D&R also challenges Deputy Commissioner Nolan's determination that "on December 8, 1996, the Licensee, through its agent, sold an alcoholic beverage to Rhonda J. Bolden and permitted Rhonda J. Bolden, a person under the age of 21, to enter and remain within the licensed premises" in violation of the Chicago Municipal Code. Chicago Municipal Code §§ 4—60—140, 4—60—140(a) (1990). D&R argues that an affirmative defense available under state law shields it from liability for its actions in this regard.

Section 6—16 of the Liquor Control Act of 1934, prohibiting, *inter alia*, the sale of alcoholic beverages to minors, provides in part:

> "For the purpose of preventing the violation of this Section, any licensee, or his agent or employee *** may refuse to sell, deliver, or serve alcoholic beverages to any person who is unable to produce adequate written evidence of identity and of the fact that he or she is over the age of 21 years.

Adequate written evidence \*\*\* includ[es] \*\*\* a motor vehicle operator's license \*\*\*. Proof that the defendant-licensee, or his employee or agent \*\*\* demanded, was shown and *reasonably* relied upon such written evidence in any transaction forbidden by this Section is an affirmative defense in any criminal prosecution therefor or to any proceedings for the suspension or revocation of any license based thereon." (Emphasis added.) 235 ILCS 5/6—16(a) (West 1998).

Section 6—16.2 of the Liquor Control Act of 1934 provides essentially the same affirmative defense with respect to prohibited entry by minors onto licensed premises. 235 ILCS 5/6—16.2 (West 1998).

It is undisputed that: (1) on the night of December 8, 1996, Bolden was a minor; (2) in order to gain admission to the Shadows premises, Bolden presented an Illinois motor vehicle operator's (driver's) license for inspection by a Shadows employee; (3) that same Shadows employee admitted Bolden to the Shadows premises, where Bolden remained for over two hours; and (4) another Shadows employee sold Bolden two alcoholic beverages. It is further undisputed that: (5) the driver's license that Bolden presented to gain admission to the Shadows premises had expired 27 months earlier; (6) the license depicted a woman more than 10 years older than Bolden; (7) the license stated that the license holder's eyes were hazel; and (8) Bolden's eyes were in fact brown. Deputy Commissioner Nolan stated in his Findings of Fact that "the identification given by Rhonda J. Bolden being a driver's license was not the type of identification that a reasonable person would rely upon as the driver's license had expired three years earlier." D&R argues that the fact that the license was expired at the time of its presentation is irrelevant and has no effect on the reasonableness of D&R's reliance on the license as "adequate written identification" for purposes of the statutory affirmative defense.

We do not reach the question of whether a licensee's reliance upon expired identification, either in admitting persons to its licensed premises or in serving alcoholic beverages, is *per se* unreasonable for purposes of the statutory affirmative defense. The reasonableness of a licensee's reliance on a given item of identification is a question of fact to be determined by the LLCC. *Fermi National Accelerator Lab v. Industrial Comm'n*, 224 Ill. App. 3d 899, 911 (1992); *Crockett v. Industrial Comm'n*, 218 Ill. App. 3d 116, 121-22 (1991). Its determination will not be disturbed on appeal unless it is against the manifest weight of the evidence—the opposite conclusion must be clearly evident. *Hamwi v. Zollar*, 299 Ill. App. 3d 1088, 1092 (1998); *Haynes v. Police Board*, 293 Ill. App. 3d 508, 511 (1997). " '[T]here need only

be some competent evidence in the record to support its findings.' " *Haynes*, 293 Ill. App. 3d at 512, quoting *Jagielnik*, 271 Ill. App. 3d at 875.

The record reflects that although the driver's license in question was not produced at hearing, Deputy Commissioner Nolan was able to examine a photocopy thereof. Not only had the license been expired for over 27 months when Bolden used it to gain admission to Shadows, it depicted an individual with different colored eyes who was 10 years older than Bolden. With due deference to the unique position of the LLCC in determining the weight of the evidence, we hold that there is sufficient competent evidence in the record to support its findings. *Haynes*, 293 Ill. App. 3d at 512. After a careful review of the record, we cannot say that the LLCC's determination that D&R unreasonably relied upon the driver's license that Bolden presented was against the manifest weight of the evidence. *Hamwi*, 299 Ill. App. 3d at 1092. Therefore, the statutory affirmative defenses available under sections 6—16 and 6—16.2 of the Liquor Control Act of 1934 do not insulate D&R from liability. 235 ILCS 5/6—16(a), 6—16.2 (West 1998).

For the foregoing reasons, we affirm the judgment of the circuit court with respect to the LLCC's findings of fact, reverse the judgment of the circuit court with respect to the amended order and reinstate the 21-day order of suspension issued by the LLCC and affirmed by the LAC.

Affirmed in part and reversed in part; judgment of administrative agency reinstated.

McNULTY, P.J., and TULLY, J., concur.