COMPREHENSIVE COMMUNITY SOLUTIONS, INC., Plaintiff-Appellant, v. ROCKFORD SCHOOL DISTRICT No. 205 *et al.*, Defendants-Appellees.

Fourth District    No. 4—03—0821

Argued July 14, 2004.—Opinion filed September 1, 2004.

Thomas H. Wilson and James G. Fahey, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, and David J. Chizewer (argued), of Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, of Chicago, for appellant.

Thomas J. Lester and Nancy G. Lischer (argued), both of Hinshaw & Culbertson, of Chicago, for appellee Rockford School District No. 205.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Mary Patricia Kerns (argued), Assistant Attorney General, of counsel), for appellee State Board of Education.

JUSTICE TURNER delivered the opinion of the court:

In June 2001, plaintiff, Comprehensive Community Solutions, Inc.

(CCS), submitted a charter-school application to defendant, Rockford School District No. 205 (School District). In September 2001, the School District rejected CCS's proposal. CCS appealed the decision to defendant, the Illinois State Board of Education (ISBE). In May 2002, ISBE affirmed the School District's denial of the charter. In July 2002, CCS filed a complaint for administrative review. In September 2003, the circuit court affirmed ISBE's decision.

On appeal, CCS argues (1) this court should presume the findings of the ISBE appeal panel are true, (2) ISBE's denial of the charter-school application violated the Charter Schools Law (105 ILCS 5/27A—1 through 27A—13 (West 2000)), and (3) ISBE's decision was clearly erroneous. We affirm.

## I. BACKGROUND

In June 2001, CCS submitted a charter-school application to the School District pursuant to the Charter Schools Law (105 ILCS 5/27A—1 through 27A—13 (West 2000)), proposing the YouthBuild Rockford Charter School (YouthBuild) to serve "at-risk and out-of-school students through a multifaceted program of educational, social, and employability supports that provide youth with the full range of resources they need to transition from 'street to work' or 'street to school' effectively." The application included a financial plan regarding the economic soundness of the proposed charter school as required by section 27A—7(a)(9) of the Charter Schools Law (105 ILCS 5/27A—7(a)(9) (West 2000)).

On August 14, 2001, the Rockford Board of Education held a public meeting, wherein several people expressed support for the YouthBuild proposal. The Board of Education's charter-school advisory committee evaluated the proposal and recommended approval of a contract contingent upon successful negotiations of the financial plan. On August 28, 2001, the Board of Education rejected a motion to grant the YouthBuild proposal by a 3 to 3 vote. In September 2001, the Board of Education filed a report, notifying ISBE of the denial of the YouthBuild proposal. In part, the report indicated board members found the YouthBuild proposal would provide "duplicative" services and "[g]iven the dire financial situation, the Rockford School District cannot take on more debt." CCS formally appealed the decision to ISBE.

In November 2001, an ISBE appeal panel held a hearing as to CCS's appeal. The School District stated it currently had a $20 million deficit in its education fund and had been "operating on a deficit budget for at least 25 years." In January 2002, the appeal panel requested additional information from CCS.

In February 2002, the appeal panel found the YouthBuild proposal complied with the Charter Schools Law and recommended the denial of the proposal be reversed and ISBE grant the charter. The appeal panel found the "cumulative net 'deficits' to Rockford over five years ranging from $2,570,962 at 100% of the per capita tuition rate to $1,873,170 at 80% of the per capita rate. These figures represent .27% and .20% respectively of the five-year cumulative educational budgets projected for Rockford." The appeal panel noted the possible loss of revenue was not to be minimized but noted "a revenue loss to the district is inescapable under the Charter Schools Law[ ] but is necessary to serve the law's goal 'to provide parents and pupils with expanded choices within the public school system.' " Further, the panel found

> "[b]y funding charter schools through per[-]capita payments from the district, the Charter Schools Law recognizes that the funding in essence 'belongs to' the student and the student's parents[ ] and may be spent in a charter school rather than in the district's schools if the parents see fit. So viewed, the creation of a charter 'costs' a district nothing."

The appeal panel concluded the financial impact on the School District did not make the proposal economically unsound by jeopardizing the educational programs available to the School District's other students. The State Superintendent of Education, Respicio F. Vazquez, reviewed the record and recommended ISBE grant a charter to the YouthBuild charter school.

On February 20 and 21, 2002, ISBE held a meeting to discuss CCS's charter-school appeal and requested additional information. On March 13, 2002, ISBE held another meeting and requested additional information. The School District provided information, indicating that if the charter-school proposal was approved, the total estimated deficit incurred by the School District would be $1,037,363. Further, the School District stated that in considering the $12,200,034 in budget cuts and $55 million in tax-anticipation warrants maturing in October 2002, "it [was] apparent that the [School District] cannot take on new debt." The School District's report also indicated a referendum to repay tax objectors would require an additional $3,100,000 to be paid to bondholders over a 10-year period.

In May 2002, ISBE conducted meetings on the charter-school appeal. ISBE board members voted down the motion to reverse the School District's denial of the proposal on a 4 to 4 vote. The members voting to deny the charter expressed their concerns over the School District's financial problems. In its final decision denying the appeal, ISBE found the proposed charter school was "not economically sound

for [the School District] in view of the serious financial problems that currently exist in the district."

In July 2002, CCS filed a complaint for administrative review, asking the circuit court to reverse the decisions of the School District and ISBE and grant its charter. In January 2003, the court remanded the matter to ISBE to set forth what evidence it accepted or rejected in making its decision. In June 2003, ISBE indicated it denied the appeal for the following reasons:

> "(1) board members were concerned that the charter[-]school proposal had not adequately shown that it was economically sound for the charter school and the school district;
>
> (2) board members reviewed additional material such as an independent financial analysis by ISBE staff of costs and budget impact; and
>
> (3) board members expressed reservations that the charter[-] school proposal was in the best interests of the students it was designed to serve."

In September 2003, the court affirmed the administrative decision. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

■ In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3—101 through 3—113 (West 2002)), this court reviews the administrative agency's decision and not the circuit court's determination. *Key Outdoor, Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 320, 750 N.E.2d 709, 712 (2001). Cases involving ISBE's decision to accept or reject a charter-school application involve a mixed question of fact and law. *Board of Education of Community Consolidated School District No. 59 v. State Board of Education*, 317 Ill. App. 3d 790, 796, 740 N.E.2d 428, 434 (2000). The standard of review applicable to agency decisions that present a mixed question of law and fact is the clearly erroneous standard. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). Under this standard, we will reverse only if, after reviewing the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393, 763 N.E.2d 272, 280-81 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

### B. Review of Findings

CCS argues this court should base our review on the findings of

ISBE's appeal panel and "not the cursory, incomplete[,] and unexplained conclusions of *** ISBE." We disagree.

■ Under the Charter Schools Law, an applicant seeking to establish a charter school must submit a proposal to ISBE and the local school board, setting forth all the details of the proposed charter school. 105 ILCS 5/27A—7(a) (West 2000). The proposal must include, *inter alia*, a proposed budget and "[e]vidence that the terms of the charter as proposed are economically sound for both the charter school and the school district." 105 ILCS 5/27A—7(a)(9) (West 2000).

After the local school board decides to grant or deny the charter-school proposal, it must file a report with ISBE. 105 ILCS 5/27A—8(f) (West 2000). The applicant may appeal the denial of the proposal to ISBE, and ISBE may request additional evidence to decide the appeal. 23 Ill. Adm. Code §§ 650.60(a), (b) (Conway Greene CD-ROM April 2000). Following oral presentations, staff of ISBE must then submit a recommendation to the State Superintendent of Education, who submits the findings and recommendation to ISBE for a final decision. 23 Ill. Adm. Code § 650.60(d) (Conway Greene CD-ROM April 2000). ISBE "may reverse a local board's decision if [ISBE] finds that the charter school or charter[-]school proposal (i) is in compliance with this [a]rticle, and (ii) is in the best interests of the students it is designed to serve." 105 ILCS 5/27A—9(e) (West 2000). ISBE's final decisions are subject to review under the Administrative Review Law. 105 ILCS 5/27A—9(e) (West 2000).

In the case *sub judice*, CCS places great weight in the appeal panel's "detailed analysis" and "eight pages of factual findings and conclusions," while deriding ISBE's "one-sentence" and "two-paragraph" decisions that lack the "detail" of the appeal panel's report. However, CCS has failed to cite authority to indicate this court must review the findings and recommendations of the appeal panel instead of the final decision of ISBE.

■ Our supreme court has stated that "administrative proceedings may be conducted by hearing officers who refer the case for final determination to a board which has not 'heard' the evidence in person." *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 128, 357 N.E.2d 785, 791 (1976). The rights of due process are satisfied "if the decision-making board considers the evidence contained in the report of proceedings before the hearing officer and bases its determinations thereon." *Homefinders*, 65 Ill. 2d at 128, 357 N.E.2d at 791.

A hearing officer may conduct administrative proceedings and refer the case for final determination to a decisionmaking body. *Gounaris v. City of Chicago*, 321 Ill. App. 3d 487, 492, 747 N.E.2d 1025, 1030 (2001). "The hearing officer hears the evidence and *recom-*

*mends* findings and a disposition to the decision[ ]making authority of the administrative agency." (Emphasis in original.) *Gounaris*, 321 Ill. App. 3d at 492, 747 N.E.2d at 1030. The agency then makes its own decision based on the record and may accept or reject the hearing officer's recommendations. *Gounaris*, 321 Ill. App. 3d at 492, 747 N.E.2d at 1030. In *Cherington v. Selcke*, 247 Ill. App. 3d 768, 775, 617 N.E.2d 514, 518 (1993), this court noted "[i]t is the decision of the agency, not that of its hearing officer, which is entitled to deference." See also *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 64-65, 739 N.E.2d 57, 62 (2000) (agency's final decision is subject of review in administrative review proceeding, and hearing officer's findings are not entitled to deference over agency's findings of facts).

In *Pundy v. Department of Professional Regulation*, 211 Ill. App. 3d 475, 478, 570 N.E.2d 458, 460 (1991), the Department of Professional Regulation filed a complaint against Pundy, a psychiatrist, alleging, *inter alia*, he engaged in sexual relations with a patient. A hearing officer found no credible evidence of improper sexual activity and recommended no discipline be imposed. *Pundy*, 211 Ill. App. 3d at 480, 570 N.E.2d at 461-62. The Medical Disciplinary Board declined to follow the hearing officer's recommendation and recommended that Pundy's medical license be suspended. *Pundy*, 211 Ill. App. 3d at 480, 570 N.E.2d at 462. The Department adopted the recommendation, and the circuit court upheld the decision. *Pundy*, 211 Ill. App. 3d at 480-81, 570 N.E.2d at 462.

On appeal, Pundy argued that although the disciplinary board was not required to rehear the evidence to reject the hearing officer's findings and recommendations, the hearing officer's report must be given weight by the reviewing court. *Pundy*, 211 Ill. App. 3d at 486, 570 N.E.2d at 466. The appellate court "found that while the decision of the hearing officer is part of the record, it is the decision of the [b]oard, not the hearing officer, which is reviewed by the court." *Pundy*, 211 Ill. App. 3d at 486, 570 N.E.2d at 466.

Here, ISBE is the final decisionmaker on the issue of whether to grant or deny a charter-school proposal. Although ISBE may delegate to staff to hear oral presentations and submit recommendations to the State Superintendent of Education, it is ISBE's duty to take the findings and recommendations and make a final decision. It is that decision that is subject to judicial review under the Administrative Review Law.

CCS argues this conclusion is contrary to decisions in *Reinhardt v. Board of Education of Alton Community Unit School District No. 11*, 61 Ill. 2d 101, 329 N.E.2d 218 (1975), and *District No. 59*, 317 Ill. App. 3d 790, 740 N.E.2d 428. In *Reinhardt*, 61 Ill. 2d at 103, 329 N.E.2d at

220, the supreme court stated "a decision by an administrative agency must contain findings to make possible a judicial review of the agency's decision." However, *Reinhardt* does not stand for the proposition that if any administrative agency's decision is not as "detailed" as a hearing officer's findings, then the hearing officer's recommendations become the final decision for judicial review. Instead, *Reinhardt* held the cause must be remanded for further proceedings and allow the administrative body to enter its findings. *Reinhardt*, 61 Ill. 2d at 103, 329 N.E.2d at 220. We note the circuit court cited *Reinhardt* in remanding this matter to ISBE to indicate which findings of the appeal panel it accepted or rejected. ISBE reviewed the record and submitted its final decision with accompanying evidentiary reasons, and the court affirmed the decision.

In *District No. 59*, 317 Ill. App. 3d at 791-92, 740 N.E.2d at 43⅃, the applicant sought to establish a charter school and submitted its proposal. The school district rejected the proposal, and the applicant sought review by ISBE. *District No. 59*, 317 Ill. App. 3d at 792, 740 N.E.2d at 431. Following review and recommendations by the appeal panel, ISBE issued a final decision reversing the local school board's decision. *District No. 59*, 317 Ill. App. 3d at 792, 740 N.E.2d at 431. The circuit court affirmed ISBE's decision. *District No. 59*, 317 Ill. App. 3d at 792, 740 N.E.2d at 431.

The appellate court noted ISBE's final administrative decisions may be appealed to the courts. *District No. 59*, 317 Ill. App. 3d at 794, 740 N.E.2d at 432. The court plainly indicated it was reviewing ISBE's decision and did not indicate it was the appeal panel's findings and recommendations that required deference. As ISBE concurred with the appeal panel in *District No. 59*, CCS cannot contend the appellate court affirmed ISBE's decision based solely on the decision of the appeal panel.

█ The argument by CCS that the appeal panel's findings are the decisions requiring judicial deference is without merit. ISBE is not a rubber stamp that must blindly agree to the recommendations of the appeal panel, and CCS has not cited any case law to indicate ISBE must deferentially bow to the wishes of its own appeal panel. Moreover, CCS has not cited any authority requiring this court's deference to the findings and recommendations articulated by an entity other than the final agency decisionmaker. Here, ISBE reviewed the record and listed reasons for denying the appeal, and thus ISBE's decision was sufficient to make judicial review possible. As ISBE may accept or reject the appeal panel's recommendations, ISBE's final decision is the proper subject of review.

## C. Financial Impact and the Charter Schools Law

■ CCS argues ISBE's denial of the charter-school application based only on "school[-]district economics" violated the Charter Schools Law. We disagree.

As stated earlier, the charter-school proposal to be submitted to the local school board and ISBE must include detailed information, including "[e]vidence that the terms of the charter as proposed are economically sound for both the charter school and the school district." 105 ILCS 5/27A—7(a)(9) (West 2000). ISBE has "the explicit power to reverse the decision of a local school district upon a finding that the charter proposal is in compliance with the [Charter Schools Law] and is in the best interests of the students it is designed to serve." *District No. 59*, 317 Ill. App. 3d at 795, 740 N.E.2d at 433-34.

In this case, ISBE indicated "board members were concerned that the charter[-]school proposal had not adequately shown that it was economically sound for the charter school and the [S]chool [D]istrict." Moreover, ISBE stated that "based on the uncertain impact of an insufficiently clear charter[-]school proposal upon a school district already in grave financial condition and in turn upon the proposed charter school itself, the board members found that the charter[-] school proposal was not in the best interests of the students it was designed to serve." CCS argues that although financial terms of a charter-school proposal are a consideration, to make district finances the sole or dispositive consideration "would undermine the entire purpose of the Charter School[s] Law."

The General Assembly enacted the Charter Schools Law in part to "provide parents and pupils with expanded choices within the public school system." 105 ILCS 5/27A—2(b)(6) (West 2000). In the charter-school contract, the charter school and local school district must agree on funding and any services to be provided by the school district. 105 ILCS 5/27A—11(b) (West 2000). Further, ISBE is required to make transition impact aid available to the school district that approves a new charter school or if it withholds funds when it charters a new school. 105 ILCS 5/27A—11.5(1) (West 2000). Thus, *economic interests are very much a concern in the proposal of a charter school.*

CCS appears to argue that if other relevant factors outweigh the financial impact on the school district, the charter-school proposal must be accepted. However, the Charter Schools Law does not require such blanket acceptance of proposals. Instead, evidence must be shown that the proposal is economically sound for both the charter school and the school district. Such evidence must realistically require consideration of the school district's finances. CCS argues section 27A—7(a)(9) of the Charter Schools Law was not meant to provide a

school district with an "absolute veto" over any charter-school proposal based on the district's existing financial condition. It should be noted the school district does not have an "absolute veto" as ISBE can reverse the decision of a local school board if the proposal meets the requirements of the Charter Schools Law as it did in *District No. 59*, 317 Ill. App. 3d at 792, 740 N.E.2d at 431. Further, ISBE's decision is subject to further review by the circuit court and the appellate court. Here, the board members considered evidence the School District was in "grave financial condition" and found the proposal "was not in the best interests of the students it was designed to serve." We find ISBE's focus on the School District's finances was a valid factor to consider and did not violate the express goals of the Charter Schools Law.

### D. ISBE's Final Decision Denying CCS's Appeal

█ CCS argues ISBE's decision denying its appeal was clearly erroneous. We disagree.

The factual findings of an administrative agency are held to be *prima facie* true and correct. *Cathedral Rock of Granite City, Inc. v. Illinois Health Facilities Planning Board*, 308 Ill. App. 3d 529, 542, 720 N.E.2d 1113, 1122 (1999); 735 ILCS 5/3—110 (West 2002). "In examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of an administrative agency." *Belvidere*, 181 Ill. 2d at 204, 692 N.E.2d at 302. "If the record contains evidence supporting the administrative agency's decision, the decision should be affirmed." *Cathedral*, 308 Ill. App. 3d at 542, 720 N.E.2d at 1122; see *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).

CCS argues ISBE did not issue a decision based on the factors defined in the Charter Schools Law. We find CCS's reliance on *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 776 N.E.2d 166 (2002), is misplaced. In that case, the Administrative Code contained a list of 25 factors that the Department of Employment Security was to examine in determining whether direction or control existed on the issue of the employment status of carpet installers and measurers. *Carpetland*, 201 Ill. 2d at 374, 776 N.E.2d at 180. The Director, however, "ignored the 25 factors." *Carpetland*, 201 Ill. 2d at 375, 776 N.E.2d at 180. The supreme court examined the evidence using the 25 factors and was left with the definite and firm conviction the Director was incorrect. *Carpetland*, 201 Ill. 2d at 383, 776 N.E.2d at 185.

As to this case, *Carpetland* does not stand for the proposition

ISBE must discuss every finding and recommendation of the appeal panel in making its final administrative decision. The 15 factors listed in section 27A—7 of the Charter Schools Law are requirements the applicant must include when submitting the charter-school proposal to ISBE. When deciding whether to reverse a local board's decision, ISBE looks at the charter-school proposal and whether it "(i) is in compliance with this [a]rticle, and (ii) is in the best interests of the students it is designed to serve." 105 ILCS 5/27A—9(e) (West 2000). Here, ISBE considered the economic impact the proposal would have on the charter school and the School District, one of the requirements in this article, and the best interests of the students. Thus, ISBE examined the relevant statutory factors, and a reexamination of the facts is not warranted.

CCS also argues ISBE misinterpreted the school district's financial information. ISBE indicated it considered evidence that the School District was in "grave financial condition." An independent audit found the School District's projected operating deficit, liability in long-term debt, uncertainty in repayment of two outstanding bond issues, and not-yet-identified funding source for future court-ordered expenditures raised "a substantial doubt about the District's ability to continue as a going concern." ISBE cited to the record indicating the total estimated deficit for the Board of Education would be $1,037,363 if the application was granted. In considering the $12,200,034 in cuts approved and the $55 million in tax-anticipation warrants, the Board of Education stated it could not take on new debt. Further, an additional $3,100,000 was to be paid to bondholders over a 10-year period. ISBE's decision also found "considerable confusion" over which figures apply to which funding level. ISBE was unclear what level of funding CCS sought, such as the minimum 75% level, a variable level ranging from 88% in the first year to 95% in the fifth year, or the maximum 100% level.

ISBE conducted meetings, requested additional information, and reviewed the record in making its final decision. Based on the financial concerns to the School District and the proposed charter school, ISBE concluded "the proposal was not in the best interests of the students it was designed to serve." The Charter Schools Law requires evidence that the terms of the proposal are economically sound for both the charter school and the school district. 105 ILCS 5/27A—7(a)(9) (West 2000). ISBE was unable to find the economic soundness of this proposal, a necessary requirement considering the large expenditure of public funds and the state of education spending in Illinois. In reviewing the final decision of ISBE and its reasoning, we are not left with the definite and firm conviction that a mistake has been commit-

ted. Thus, we hold ISBE's decision denying CCS's appeal was not clearly erroneous.

## III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.